Tony **LABRADO** and Sunset Coaches, Inc., Appellants,

v.

**COUNTY OF EL PASO**, Texas and Lulac Project Amistad, Inc., Appellees.

No. 08–02–00403–CV.

Court of Appeals of Texas, El Paso.

March 18, 2004.

Rehearing Overruled April 28, 2004.

James O. Houchins, Law Offices of James O. Houchins, Austin, for Appellants.

Kitty Schild, Asst. County Atty., El Paso, for County of El Paso.

John P. Mobbs, El Paso, for LULAC Project Amistad, Inc.

Before Panel No. 4 BARAJAS, C.J., SUSAN LARSEN, and McCLURE, JJ.

## OPINION

SUSAN LARSEN, Justice.

El Paso County awarded two contracts for transit services to LULAC Project Amistad, Inc. Thereafter, Sunset Coaches, Inc., a disappointed bidder, and Tony Labrado, Sunset's president, brought this suit against the County and LULAC, challenging the awards of the contracts. The trial court granted summary judgment in favor of the County and LULAC. We dismiss in part, reverse and render in part, and reverse and remand in part.

FACTUAL AND PROCEDURAL BACKGROUND

In October 2000, the County issued a request for bids in Bid Number 00–081 for operation of a rural transit system to serve several upper valley communities of El Paso County. The request for bids included the following provisions that are relevant to this case:

- The successful bidder would become the operator of paratransit vehicles already owned by the County;
- The operator would provide all required maintenance on the County's vehicles and all necessary labor, insurance, and fuel;
- "The operator must maintain a well-equipped garage with appropriate Personnel to provide maintenance on the County vehicle(s);"

- Each bid "shall list the number of employees and their job classification . . . existing equipment and location of shop facilities, bus barns and other transit operations;"
- "The operator shall have all necessary licenses issued by appropriate state agencies to operate a transit system in the State of Texas;"
- The contract would be let "to the lowest responsible bidder, and the Commissioner's Court reserve[d] the right to reject any and all bids and waive technicalities [and][o]nly bids that conform to specifications" would be considered;
- The request for bids was a quotation inquiry only and implied no obligation on the part of the County.
- Each bidder was required to sign and include with its bid a form that stated: "I propose to provide all labor, fuel, insurance, maintenance on vehicle(s) equipment . . . necessary to operate the County's transit system. . . ."

Both Sunset and LULAC submitted bids. Sunset's bid price was $4,895 per month, and LULAC's bid price was $4,162.50 per month. The County awarded the contract to LULAC.

In April 2001, the County issued a request for bids in Bid Number 01–042 for operation of a rural transit system to serve the same upper valley communities covered by Bid Number 00–081, as well as several lower valley communities of El Paso County. This request for bids contained the same provisions as the request in Bid Number 00–081 listed above. It also contained the following additional provisions:

- "By submitting a bid, each bidder agrees to waive any and all claims it has or may have against the County of El Paso, and its officers, agents, and employees, arising out of or in connection with: the documents, procedures, administration, evaluation, or recommendation of any bid; the waiver by El Paso County of any requirements under the bid documents or the contract documents; the acceptance or rejection of any bids; and the award of the contract." (This provision appeared in capitalized, bold lettering.)
- Each bidder was required to sign and include with its bid a form that stated: "By execution of this bid, I hereby represent and warrant to El Paso County that I have read and understood the Bid Documents and the Contract Documents and this bid is made in accordance with the Bid Documents."

Again, both Sunset and LULAC submitted bids. Sunset's bid price was $19,500 per month, and LULAC's bid price was $19,395.83 per month. The County awarded the contract to LULAC.

In September 2001, Sunset and Labrado filed this suit. They alleged that LULAC was not the lowest responsible bidder for either contract because, contrary to the bid specifications, LULAC does not maintain a garage for maintenance of the County's vehicles, nor does it have the Texas Department of Transportation registration that is required to operate a transit system. They further alleged that Sunset does maintain a garage and does have the required registration.

Sunset and Labrado sought a declaratory judgment that the County violated section 262.027(a) of the Texas Local Government Code by awarding the contracts to LULAC, that the contracts are void, and that the contracts should have been awarded to Sunset because it was the lowest responsible bidder. Alternatively, they sought a declaration that Sunset's and LULAC's bids for Bid Number 01–042 were

identical and that the contract should have been awarded by drawing lots, as provided for in section 262.027(b) of the Texas Local Government Code. In connection with their declaratory judgment claim, Sunset and Labrado requested an award of attorney's fees. They also sought a temporary injunction to halt performance under the contracts during the pendency of this action and a permanent injunction to enjoin performance under the contracts and award them to Sunset. Finally, Sunset sought damages for the lost profits it would have realized if the contracts had been awarded to it.

The County filed a plea to the jurisdiction, motion for summary judgment, and plea in abatement. In its plea to the jurisdiction, the County argued that none of the appellants' claims fall within the Texas Tort Claims Act's waiver of governmental immunity. In its motion for summary judgment, the County made the same argument and also argued that by submitting bids, the appellants waived their right to object if their bids were not selected. In its plea in abatement, the County argued that the appellants failed to present their claim to the Commissioners Court before filing this suit.

LULAC filed a motion for summary judgment. Like the County, LULAC argued that the appellants waived their right to object if their bids were not selected. It also argued that its bid was responsive to the requests for bids, that it maintains a garage as required by the requests for bids, and that it has all necessary licenses to operate a transit system as required by the requests for bids.

The appellants filed a motion for partial summary judgment, arguing that they were entitled to judgment as a matter of

law on all issues except for the amount of damages and attorney's fees. The trial court heard all three parties' motions together and later signed an order denying the appellants' motion for partial summary judgment and granting the appellees' motions for summary judgment. The court did not rule on the County's plea to the jurisdiction or plea in abatement.[1]

In April 2003, LULAC filed a motion to dismiss this appeal for lack of jurisdiction. LULAC argued that the appellants lack standing and that the case is moot because the contracts have been substantially performed. We denied this motion without a written order or opinion. In July 2003, the County filed a motion to dismiss the appeal for lack of jurisdiction. The County argued that the appellants lack standing, that the case is moot, and that it has governmental immunity from the claims asserted by the appellants. We notified the parties that we would consider the County's motion to dismiss along with the merits of the case. We turn to the issues presented in that motion now.

## STANDING

Because it is a component of subject matter jurisdiction, standing is an issue that may not be waived by the parties and that may be raised for the first time on appeal by any party or the court itself. *Tex. Ass'n of Bus. v. Tex. Air Control Bd.,* 852 S.W.2d 440, 445–46 (Tex.1993). As a general rule, standing consists of some interest peculiar to the plaintiff individually rather than as a member of the public. *Hunt v. Bass,* 664 S.W.2d 323, 324 (Tex. 1984). This general rule applies unless standing has been statutorily conferred on the plaintiff. *Williams v. Lara,* 52 S.W.3d

---

1. Because the court did not rule on the plea in abatement, the issue raised in that plea is not before us.

171, 178 (Tex.2001); *El Paso County Hosp. Dist. v. Gilbert,* 64 S.W.3d 200, 202 (Tex.App.-El Paso 2001, pet. denied). When standing has been statutorily conferred, the statute itself serves as the proper framework for analysis. *Daimler-Chrysler Corp. v. Inman,* 121 S.W.3d 862, 869 (Tex.App.-Corpus Christi 2003, pet. filed). If a statute provides that any citizen or taxpayer may bring an action, the plaintiff need only establish that he or she falls within one of these categories to establish standing; it is not necessary to establish an interest peculiar to the plaintiff. *Scott v. Bd. of Adjustment,* 405 S.W.2d 55, 56–57 (Tex.1966).

### Injunctive Relief

The County Purchasing Act sets forth the competitive bidding procedures that counties must follow. *See* TEX. LOC. GOV'T CODE ANN. §§ 262.021–262.035 (Vernon 1999 & Supp.2004). Among other provisions, the Act requires a commissioners court to "award the contract to the responsible bidder who submits the lowest and best bid" or "reject all bids and publish a new notice." *Id.* § 262.027(a) (Vernon Supp.2004). The Act further provides that "[a]ny property tax paying citizen of the county may enjoin performance" of a contract made in violation of the Act. *Id.* § 262.033 (Vernon 1999).

It is undisputed that both Sunset and Labrado pay property taxes to El Paso County. The County concedes that section 262.033 confers standing on Labrado to seek injunctive relief. But the County argues that section 262.033 does not confer standing on Sunset because, as a corporation, it is not a citizen. The County suggests that corporations do not fit within the definition of "citizen" because they are not born or naturalized, nor are they members of the political community who owe allegiance to the community. *See* BLACK'S LAW DICTIONARY 237 (7th ed.1999).

The County also cites a legal encyclopedia for the proposition that the word "citizen" does not ordinarily include a corporation, unless the general purpose and import of the statute in which the word is found seem to require it. 18 AM. JUR.2D *Corporations* § 63 (1985). However, this section continues by stating that "there is no absolute and inflexible rule that a corporation cannot be deemed a citizen for certain purposes, and statutory and constitutional provisions must be construed to determine whether their benefits were intended to be conferred on corporations." *Id.* And another authority states, "Statutes referring to persons, residents or citizens, generally include corporations within their meaning, especially when the intent and purpose of the statute seem to require it. . . ." 8 WILLIAM M. FLETCHER, FLETCHER CYCLOPEDIA OF THE LAW OF PRIVATE CORPORATIONS § 4025, at 400 (2001).

■ The County Purchasing Act was enacted for the benefit of the public, to protect taxpayers from fraud and favoritism in the expenditure of government funds. *Securtec, Inc. v. County of Gregg,* 106 S.W.3d 803, 815 (Tex.App.-Texarkana 2003, pet. denied). The persons or entities who are most likely to be aware of violations of competitive bidding procedures are the bidders themselves. *See H & W Contracting, LLC v. City of Watertown,* 633 N.W.2d 167, 172 (S.D.2001). As the style of this case demonstrates, corporations are likely to be bidders. Therefore, including corporations within the definition of "citizen" in section 262.033 serves the intent and purpose of the Act. *See Fla. Wildlife Fed'n v. State Dep't of Env't Regulation,* 390 So.2d 64, 66, 68 (Fla.1980) (stating that "most courts which have considered the question have concluded that

corporations are citizens for the purpose of pursuing rights granted to citizens" and concluding that a corporation had standing under a statute allowing citizens to enjoin violations of environmental laws); *accord Okla. Pub. Employees Ass'n v. McCaleb,* 827 P.2d 178, 179 & n. 1 (Okla. Ct.App.1991) (statute granting standing to any "citizen" to enforce provisions relating to hiring state employees); *Sioux Falls Taxpayers Ass'n v. City of Sioux Falls,* 69 S.D. 93, 7 N.W.2d 136, 138–40 (1942) (statute granting standing to "citizen and taxpayer" to challenge violations of competitive bidding laws, including provisions requiring the awarding of contracts to the lowest responsible bidder).

The County argues that common-law taxpayer standing has been narrowly construed in Texas and the same principles that apply to common-law taxpayer standing should apply to statutory taxpayer standing. *See Williams,* 52 S.W.3d at 178–79 (noting that common-law taxpayer standing is a "limited exception" to the general rule requiring particularized injury). But the County does not cite any case holding that corporations are ineligible for common-law taxpayer standing. At least one case indicates that a corporation is eligible for taxpayer standing, although the issue was not raised by the governmental entity. *See Int'l Bank of Commerce v. City of Laredo,* 608 S.W.2d 267, 270 (Tex.Civ.App.-San Antonio 1980, writ dism'd) (holding that a bank that claimed it was the highest qualified bidder for a contract had standing to sue as a taxpayer). Moreover, one commentator has opined that "a corporation which is a taxpayer has as much right as an individual to institute a taxpayers' suit." 18 EUGENE MCQUILLIN, THE LAW OF MUNICIPAL CORPORATIONS § 52.12, at 24 (3d ed.2003); *see also* TEX. BUS. CORP. ACT ANN. art. 2.02A(2) (Vernon Supp.2004) (granting corporations the power to sue and be sued in the corporate name).

### Declaratory Relief

We have concluded that both Labrado and Sunset have standing under section 262.033 to seek injunctive relief. Because we have reached this conclusion, it follows that the appellants also have standing to seek declaratory relief. *See Gilbert,* 64 S.W.3d at 202–03.

In *Gilbert,* the plaintiffs sought injunctive relief under a statute that allowed any person who owns taxable property to enjoin the taxing unit from adopting a tax rate under certain circumstances. *See id.* at 201 & n. 2. We held that because the statute conferred standing to seek injunctive relief, the plaintiffs did not need to separately establish their standing to seek ancillary declaratory relief under the Declaratory Judgments Act. *See id.* at 202–03. Accordingly, because section 262.033 confers standing on the appellants to enjoin performance of a contract that violates the County Purchasing Act, they do not need to separately establish standing to seek a declaration to the same effect.

To show that the appellants do not have standing to seek declaratory relief, the County and LULAC rely on the following general principles: (1) a shareholder does not have standing to seek redress of injuries suffered by the corporation, *see Murphy v. Campbell,* 964 S.W.2d 265, 268 (Tex. 1997); (2) a person who is not a party to a contract does not have standing to challenge the contract, *El Paso Cmty. Partners v. B & G/Sunrise Joint Venture,* 24 S.W.3d 620, 626 (Tex.App.-Austin 2000, no pet.); and (3) a disappointed bidder has no property interest in the awarding of the contract, *see id.* at 625–26. We do not disagree with these principles in general; they are simply irrelevant when a statute confers standing. *See Williams,* 52

S.W.3d at 178; *Scott,* 405 S.W.2d at 56–57; *DaimlerChrysler Corp.,* 121 S.W.3d at 869; *Gilbert,* 64 S.W.3d at 202–03.[2]

## MOOTNESS

■ Like standing, mootness is a component of subject matter jurisdiction. *See Black v. Jackson,* 82 S.W.3d 44, 51–52 (Tex.App.-Tyler 2002, no pet.). The County argues that the appellants' requests for declaratory and injunctive relief are moot because the contracts at issue in this case have expired.

The contract arising from Bid Number 00–081 was effective from December 4, 2000 until August 31, 2001. The contract arising from Bid Number 01–042 was effective from September 1, 2001 to August 31, 2002. According to affidavits by the El Paso County Judge and the El Paso County Purchasing Agent, the parties continued to operate under the contract arising from Bid Number 01–042 on a month-to-month basis for a period of time after its expiration date. In April 2003, however, the County issued a request for bids for a new rural transit system contract. The Commissioners Court awarded this contract to LULAC, which was the only bidder. Performance under the contract commenced on August 4, 2003 and is set to terminate on August 4, 2004, subject to automatic renewal of the contract for two one-year terms, unless the County elects not to renew.[3]

■■ A suit to enjoin the performance of a contract becomes moot after the contract has been fully performed. *See Hu-*

*lett v. West Lamar Rural High Sch. Dist.,* 149 Tex. 289, 290–91, 232 S.W.2d 669, 670 (1950). When a request for injunctive relief becomes moot because the action sought to be enjoined has been accomplished, a request for declaratory relief also becomes moot. *Speer v. Presbyterian Children's Home & Serv. Agency,* 847 S.W.2d 227, 229 (Tex.1993). In some circumstances, however, a live claim for attorney's fees will prevent a suit for injunctive and declaratory relief from becoming moot. *See Camarena v. Tex. Employment Comm'n,* 754 S.W.2d 149, 151 (Tex.1988).

### *Live Claim for Attorney's Fees*

In *Camarena,* farm workers challenged the constitutionality of a law that denied unemployment benefits to most agricultural workers. The trial court rendered a declaratory judgment that the law was unconstitutional and enjoined its enforcement. Although the court determined the amount of the farm workers' reasonable and necessary attorney's fees, it concluded that sovereign immunity barred recovery of the fees. While the suit was pending, the Legislature enacted a law that would phase-in unemployment compensation for agricultural workers. Thereafter, the trial court rendered a modified judgment, declaring the old law unconstitutional and the new law constitutional. *Id.* at 150; *Tex. Employment Comm'n v. Camarena,* 710 S.W.2d 665, 667 (Tex.App.-Austin 1986). The court also enjoined the enforcement of anything less than the new law. *Camarena,* 754 S.W.2d at 150. The Texas Employment Commission appealed the modi-

---

2. The appellees also argue that the appellants lack standing to seek damages. Because of our conclusion, discussed below, that the County has governmental immunity from the damages sought in this case, we find it unnecessary to address the standing argument as it relates to damages.

3. The County has filed verified copies of the contracts, along with the affidavits, in this Court. Although these documents are not part of the appellate record, we have the authority to consider them for purposes of determining our jurisdiction. *See* TEX. GOV'T CODE ANN. § 22.220(c) (Vernon 2004).

fied judgment, arguing that the case was moot. The farm workers brought a cross-point, contending that the trial court erred in failing to award them attorney's fees. *Id.* at 150.

The supreme court held that the claim for attorney's fees prevented the case from being moot because it was "an integral part of the farm workers' claim and as such breathes life into the appeal." *Id.* at 151. The court vacated the injunctive portions of the trial court's judgment as unripe because they were based on speculation that the government would attempt to enforce something less than the new law. *Id.* at 151–52. But the court affirmed the portions of the order granting declaratory relief. *Id.* at 152.

In a later case, the supreme court limited the holding in *Camarena. See Speer,* 847 S.W.2d at 229–30. In that case, the Presbyterian Children's Home and Service Agency denied Speer a position as an adoption worker because she was not a Christian. Speer sued the Agency for unlawful discrimination, seeking solely declaratory and injunctive relief. The trial court rendered a judgment in favor of the Agency, concluding that it was exempt from the discrimination claims because it was a religious organization. Before the case was decided by the supreme court, the Agency stopped offering adoption services and abolished the position sought by Speer. *Id.* at 228.

The supreme court held that the case was moot, notwithstanding Speer's claim for attorney's fees. The court seemed to distinguish *Camarena,* at least in part, on the ground that the farm workers, unlike Speer, were successful in the trial court. *See id.* at 229. The court refused to hold that "although a party has lost in the trial court and on appeal, the possibility that Speer ... *might* prevail in [her] claim that the Agency is not a religious corporation in

this court and overcome the Agency's other defenses on remand keeps the controversy alive." *Id.* The court reasoned that such a holding would "ignore[ ] the fact that Speer, who seeks *only* injunctive and declaratory relief, can *never* show her entitlement to such relief because the position of Senior Adoption Worker no longer exists and the Agency no longer performs adoption services." *Id.* The court concluded that because "injunctive and declaratory relief are unavailable, Speer could never be a prevailing party entitled to such relief under the [Texas Commission on Human Rights] Act, even on retrial, and is thus not entitled to recover her attorneys fees and costs." *Id.* at 229–30. *But see id.* at 244 (Doggett, J., dissenting) (stating that the majority nonsensically modified *Camarena* to mean that "a party prevailing in the trial court but wrongfully denied attorney's fees may appeal; a party who does not prevail, even if as a result of the trial court's legal error, may not appeal").

Like Speer, the appellants were not successful in the trial court. Nevertheless, we believe *Speer* is distinguishable. Speer sought declaratory and injunctive relief under the Texas Commission on Human Rights Act, which provides that only prevailing parties may recover attorney's fees. *See* Tex. Lab.Code Ann. § 21.259(a) (Vernon 1996). In this case, the appellants' claim for declaratory relief arises from the Declaratory Judgments Act, which allows attorney's fees to be awarded on an "equitable and just" basis. Tex. Civ. Prac. & Rem.Code Ann. § 37.009 (Vernon 1997). Under this statute, a party does not have to prevail to be awarded attorney's fees. *Barshop v. Medina County Underground Water Conservation Dist.,* 925 S.W.2d 618, 637 (Tex.1996). In *Speer,* the supreme court emphasized that because Speer could never be a prevailing party under the Texas Commission on Hu-

man Rights Act, she could not be entitled to recover attorney's fees. 847 S.W.2d at 229–30. That cannot be said in this case.

### Capable of Repetition Yet Evading Review

■ Even if we are wrong in our interpretation of *Speer*, we conclude that we have jurisdiction over this case under the capable-of-repetition-yet-evading-review exception to the mootness doctrine. This exception applies when: (1) the challenged action was too short in duration to be litigated fully before the action ceased or expired; and (2) a reasonable expectation exists that the same complaining party will be subjected to the same action again. *Williams*, 52 S.W.3d at 184.

■ The first requirement applies in this case because the one-year-or-less terms of the contracts were too short to allow full litigation through the trial and appellate stages before the contracts expired. The County and LULAC argue that the first requirement does not apply because this case could have been reviewed if the appellants had sought a ruling on their request for a temporary injunction. The appellees note that an order granting or denying a temporary injunction is subject to an accelerated, interlocutory appeal. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 51.014(a)(4) (Vernon Supp. 2004); TEX.R.APP. P. 28.1. They therefore argue that this case could have been reviewed before the contracts expired. We disagree.

■ First, even if the trial court had granted a temporary injunction, such an injunction would have merely stopped performance under the contracts; it would not have stopped the contracts from expiring by their own terms. Second, assuming review of the temporary injunction ruling could have been completed before the contracts expired, such a review could not substitute for review of the trial court's final judgment. At a temporary injunction hearing, the merits of the underlying controversy are not presented. *Tom James of Dallas, Inc. v. Cobb*, 109 S.W.3d 877, 882 (Tex.App.-Dallas 2003, no pet.). Such a hearing is not a substitute for, nor does it serve the same purpose as a hearing on the merits. *Southwest Weather Research, Inc. v. Jones*, 160 Tex. 104, 111, 327 S.W.2d 417, 421–22 (1959); *Tom James*, 109 S.W.3d at 884. Concomitantly, the merits of the underlying controversy are also not presented in the appeal of an order granting or denying a temporary injunction. *Tom James*, 109 S.W.3d at 884–85. We therefore conclude that whether the appellants obtained a hearing on their request for a temporary injunction is irrelevant to determining whether this case could have been "litigated fully" before the contracts expired. *Williams*, 52 S.W.3d at 184.[4]

The second requirement to establish that an action is capable of repetition yet evades review also applies to this case. The appellees argue that this requirement does not apply because Sunset did not submit a bid the last time the County requested bids for the transit service. The record reflects that Sunset operated the County's rural transit service for approximately five years before

---

4. The appellants did not file suit until September 4, 2001, several days after the first contract expired. The United States Supreme Court has held that the capable-of-repetition-yet-evading-review exception will not revive a dispute that became moot before the action commenced. *Renne v. Geary*, 501 U.S. 312, 320, 111 S.Ct. 2331, 2338, 115 L.Ed.2d 288 (1991). But that holding is not dispositive of the mootness issue in this case because this suit was filed well before the second contract expired and the issues arising from the award of the two contracts are the same.

these contracts were awarded to LU-LAC. Moreover, the appellants claim that the County's award of the two contracts, one right after the other, violated the County Purchasing Act in the same way. These facts create a reasonable expectation that the appellants will be subjected to the same action again. *See Securtec,* 106 S.W.3d at 811 (applying the capable-of-repetition-yet-evading-review exception to a claim for violation of competitive bidding statutes).[5]

## GOVERNMENTAL IMMUNITY

Governmental immunity from suit protects counties from lawsuits for damages absent legislative consent. *Travis County v. Pelzel & Assocs.,* 77 S.W.3d 246, 248 (Tex.2002); *Gen. Servs. Comm'n v. Little–Tex Insulation Co.,* 39 S.W.3d 591, 594 (Tex.2001). Legislative consent to sue must be expressed in clear and unambiguous language. *Gen. Servs. Comm'n,* 39 S.W.3d at 594. Governmental immunity from suit defeats a trial court's subject matter jurisdiction. *Texas Dep't of Transp. v. Jones,* 8 S.W.3d 636, 638–39 (Tex.1999).

### Damages

The appellants conceded during oral argument before this Court that Sunset's claim for damages is barred by governmental immunity. We agree. The appellants had previously suggested that legislative consent to sue may be found in the County Purchasing Act. But the Act does not contain clear and unambiguous language expressing legislative consent for a

disappointed bidder to recover damages for a violation of the Act. Therefore, governmental immunity bars the claim for damages. *See Gen. Servs. Comm'n,* 39 S.W.3d at 594; *see also Securtec,* 106 S.W.3d at 815–16 (concluding that the Act did not create an implied right of action for disappointed bidders because the Act was enacted for the benefit of the public, not for individual bidders); James L. Isham, Annotation, *Public contracts: low bidder's monetary relief against state or local agency for nonaward of contract,* 65 A.L.R.4th 93 (1988) (stating that the majority of courts have held that a disappointed bidder may not recover damages for violation of a statute requiring the contract to be awarded to the lowest responsible bidder).

### Declaratory and Injunctive Relief

The County acknowledges that governmental immunity is generally waived for declaratory relief under the Declaratory Judgments Act and injunctive relief under section 262.033 of the County Purchasing Act. It argues, however, that in this case immunity is not waived for declaratory or injunctive relief because the appellants included a claim for money damages in their petition. The County relies on a line of cases holding that a plaintiff may not circumvent governmental immunity by disguising a claim for damages as a claim for equitable relief. *See Tex. Natural Res. Conservation Comm'n v. IT–Davy,* 74 S.W.3d 849, 856 (Tex.2002) (plurality opinion); *Freedman v. Univ. of Houston,* 110 S.W.3d 504, 508 (Tex.App.-Houston [1st

---

5. The appellants argue that this case also falls within the public-interest exception to the mootness doctrine. Although some Texas appellate courts have applied this exception, the Texas Supreme Court has expressly declined to state whether the public-interest exception is viable in this state. *See Fed. Deposit Ins. Corp. v. Nueces County,* 886 S.W.2d 766, 767 (Tex.1994); *Securtec,* 106 S.W.3d at 811; *Univ. Interscholastic League v. Buchanan,* 848 S.W.2d 298, 304 (Tex.App.-Austin 1993, no writ). Because we conclude that the case is not moot and is capable of repetition yet evades review, we need not consider the applicability of the public-interest exception.

Dist.] 2003, no pet.); *Nueces County v. Ferguson*, 97 S.W.3d 205, 218 (Tex.App.-Corpus Christi 2002, no pet.). We conclude that the cases cited by the County are inapposite.

In *IT–Davy*, a general contractor sought damages from a state agency for breach of contract. 74 S.W.3d at 851–52. The breach-of-contract claim was barred by governmental immunity. *Id.* at 856. The general contractor also sought a declaratory judgment regarding the parties' rights and obligations under the contract, and specifically requested a declaration that the state agency owed the general contractor more money under the contract. *Id.* at 859. Noting that the general contractor was not asking for an interpretation of a statute, the court concluded that the declaratory judgment claim was merely an attempt to confer jurisdiction to decide the breach-of-contract claim. *Id.* at 859–60. The court held that suits seeking to impose contractual liabilities on the state cannot be maintained without legislative consent, even if the suit is nominally one for a declaratory judgment. *Id.* at 855–56. Accordingly, the Declaratory Judgments Act did not waive governmental immunity for the relief sought by the general contractor. *Id.* at 860.

In *Freedman*, the appellants sued a university for breach of their employment contracts and also sought a declaratory judgment concerning their rights under the contracts. 110 S.W.3d at 506. The court held that the appellants could not recast their contractual claim as an equitable claim to avoid getting legislative consent to sue. *Id.* at 508.

In *Ferguson*, an employee who had been terminated by a county sued the county. 97 S.W.3d at 211–12. The court noted that the petition made no reference to declaratory relief. *Id.* at 220. Although the petition did make a reference to injunctive relief, the prayer for relief only requested damages. *Id.* The court therefore concluded that the suit was not for injunctive or declaratory relief, but for monetary damages, for which the employee needed legislative consent to sue. *Id.* at 220–21.

■ The petition in this case separately sets out claims for declaratory and injunctive relief. The paragraph seeking declaratory relief requests a declaration that: (1) the award of the contracts violated section 262.027(a); (2) the contracts are void; (3) Sunset was the lowest responsible bidder for the contracts; and (4) the contracts should have been awarded to Sunset. Alternatively, the appellants requested a declaration that the amounts of the bids under Bid Number 01–042 were identical and that the contract should therefore have been awarded by drawing lots, as provided for in section 262.027(b) of the County Purchasing Act. The paragraph seeking injunctive relief requested an order enjoining enforcement of the contracts under section 262.033 and awarding the contracts to Sunset. The prayer for relief repeated the requests for relief from each of these paragraphs.

This petition is distinguishable from the one in *Ferguson* because it clearly requests declaratory and injunctive relief. It is also distinguishable from the petitions in *IT–Davy* and *Freedman* because the requests for declaratory relief are not merely disguised attempts to confer jurisdiction over a breach-of-contract claim. The petition does not even include a breach-of-contract claim. Instead, unlike in *IT–Davy* and *Freedman*, this petition seeks the interpretation of a statute, section 262.027(a). As the County acknowledges, another statute, section 262.033, waives governmental immunity to enjoin performance of a contract made in violation of section 262.027(a), and the appellants sought such an injunction. None of

the cases cited by the County involved a suit in which the Legislature expressly granted permission for the equitable relief sought.

Under the County's interpretation of *IT–Davy, Freedman,* and *Ferguson,* any time a plaintiff includes a claim for damages in a suit against the government, immunity will bar the plaintiff from obtaining *any* other relief, even if the Legislature has expressly waived immunity for the other relief. We decline to read the cases that broadly. We therefore conclude that the appellants' claims for declaratory and injunctive relief are not barred by governmental immunity.

## THE SUMMARY JUDGMENT

Having determined that we have jurisdiction over this case, we must determine whether the trial court erred by granting the motions for summary judgment filed by the appellees and by denying the motion for partial summary judgment filed by the appellants.

### Standard of Review

We apply a *de novo* standard of review to summary judgments. *Bowen v. El Paso Elec. Co.,* 49 S.W.3d 902, 904 (Tex. App.-El Paso 2001, pet. denied). Summary judgment is proper only when the movant shows that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. *Shah v. Moss,* 67 S.W.3d 836, 842 (Tex.2001); *Nixon v. Mr. Prop. Mgmt. Co.,* 690 S.W.2d 546, 548 (Tex.1985); *Bowen,* 49 S.W.3d at 904; *see also* Tex.R. Civ. P. 166a(c). In reviewing a trial court's decision to grant summary judgment, we resolve all doubts against the movant and view the evidence in the light most favorable to the nonmovant. *Shah,* 67 S.W.3d at 842; *Bowen,* 49 S.W.3d at 904.

▮ When both sides move for summary judgment, and the trial court grants one motion while denying the other, we review the summary judgment evidence presented by both sides, determine all questions presented, and render the judgment the trial court should have rendered. *Comm'rs Court v. Agan,* 940 S.W.2d 77, 81 (Tex.1997); *see also Hallman v. Allstate Ins. Co.,* 114 S.W.3d 656, 659 (Tex.App.-Dallas 2003, pet. filed) (applying this rule when one party moved for partial summary judgment).

### Waiver

▮ The appellees both moved for summary judgment on the basis of waiver. Waiver is the intentional relinquishment of a known right. *Sedona Contracting, Inc. v. Ford, Powell & Carson, Inc.,* 995 S.W.2d 192, 195 (Tex.App.-San Antonio 1999, pet. denied); *R. Conrad Moore & Assocs. v. Lerma,* 946 S.W.2d 90, 93 (Tex.App.-El Paso 1997, writ denied). Because it is an affirmative defense, a defendant who moves for summary judgment on this basis must conclusively establish waiver. *Tenneco Inc. v. Enter. Prods. Co.,* 925 S.W.2d 640, 643 (Tex.1996); *Sedona,* 995 S.W.2d at 195; *City of El Paso v. Higginbotham,* 993 S.W.2d 819, 822 (Tex.App.-El Paso 1999, no pet.).

The appellees argue that the appellants waived all their claims by submitting the bids. They rely on *Sedona* and language in the requests for bids. In *Sedona,* a school district issued an invitation to bid on a construction contract. The invitation provided that the district could reject any or all bids. 995 S.W.2d at 194. It also provided that by submitting a bid, a bidder "agrees to waive" any claim it has or may have against the district and the architect "arising out of or in connection with the administration, evaluation, or recommendation of any bid; waiver of any require-

ments under the Bid Documents; or the Contract Documents; acceptance or rejection of any bids; and award of the Contract." *Id.* The bid form provided that by submitting the bid, the bidder acknowledged that it understood the bid documents. *Id.* at 194–95.

Although Sedona submitted the lowest bid, the district rejected it because the architectural firm concluded that Sedona was not qualified for the project. Thereafter, Sedona sued the architectural firm for tortious interference with business relations, defamation, business disparagement, and negligence. The architectural firm argued that Sedona waived these claims by submitting a bid in response to the invitation to bid containing the waiver language quoted above. *Id.* at 195. The court of appeals agreed. *Id.* at 199.

Sedona contended that the waiver of intentional torts violates public policy. The court held that public policy was not offended "[u]nder the limited circumstances" of the case for two reasons. *Id.* at 197. First, the court noted that a disappointed bidder may not recover damages from the government for failing to award the contract to it because allowing such a recovery would run contrary to the public interest. The court reasoned that allowing Sedona to recover from the architectural firm would likewise be contrary to the public interest because it could inhibit candid discussion of bidders' qualifications. *Id.* at 198. Second, the court concluded that by submitting its bid, Sedona consented to the bidding process and the possibility of a negative assessment because the bid documents indicated that the contract would be awarded on a competitive basis to the lowest responsible bidder. When it submitted its bid, Sedona acknowledged that it understood the bidding process and terms. *Id.* at 198–99.

The County points out that as in *Sedona*, both requests for bids in this case provided that the County could reject any and all bids, the bid request under Bid Number 01–042 contained waiver language that is almost identical to the waiver at issue in *Sedona*, and Sunset's bid under Bid Number 01–042 had an acknowledgment, as in *Sedona*, that Sunset understood the bid documents. The County argues that based on this language and *Sedona*, both appellants have waived all the claims asserted in this case. We cannot agree with this argument.

■ We first note that Labrado, as an individual, did not submit any bids. We fail to see how any waiver language in the bid documents can be binding on him individually.

■ More importantly, we agree with the appellants that public policy precludes us from construing the waiver language in Bid Number 01–042 as a waiver of the appellants' statutory right under section 262.033 to enjoin performance of a contract awarded in violation of the County Purchasing Act. As we have already discussed, the Act was enacted for the benefit of the public, and the members of the public who are most likely to be aware of violations of the Act are the bidders themselves. *See Securtec*, 106 S.W.3d at 815. In *H & W Contracting*, the South Dakota Supreme Court, citing decisions from several other states, declared:

[I]n reality, few taxpayers are willing to shoulder the time and expense necessary to pursue such an action [to challenge the award of a public contract]. On the other hand, a disappointed bidder is intimately involved in the bid-letting process, will be familiar with any irregularities, and can be expected to protect its interests. A disappointed bidder is more likely, and more able, to challenge a bid-letting process that vio-

lates the competitive bidding laws, and thereby protect not only its own rights, but also those of the public.

633 N.W.2d at 172 (citations omitted). The County's interpretation of the waiver language would eviscerate section 262.033.

Although *Sedona* involved the same language, it is clearly distinguishable from this case. Sedona was seeking damages for itself, not an injunction for the benefit of the public. Section 262.033 was not at issue. Moreover, the *Sedona* court recognized the importance of supporting the competitive bidding laws. The court reasoned that allowing a disappointed bidder to recover from a government consultant would be contrary to the public interest because it could inhibit candid discussion about bids. Similarly, allowing the County to condition its consideration of every bid on the bidders' relinquishment of their rights under section 262.033 would be contrary to the public interest in enforcing the Act.

For these reasons, we conclude that Sunset did not waive its right to seek injunctive and ancillary declaratory relief under section 262.033 by submitting its bids.

### Review of the Commissioners Court's Decision

The appellants contend that LULAC was not a responsible bidder under section 262.027(a) because it does not maintain a well-equipped garage for maintenance of the County's vehicles and does not have a necessary license to operate a transit system in Texas. Before we may consider the substance of these contentions, we must determine what standard we should apply in reviewing the Commissioners Court's determination that LULAC was a responsible bidder.

LULAC argues that the Commissioners Court's determination may not be over-turned unless it is not supported by substantial evidence or was arbitrary and capricious. The appellants argue that our review is not so limited.

 The Texas Constitution establishes the commissioners courts as the principal governing bodies of counties. *Agan*, 940 S.W.2d at 79. The powers and duties of commissioners courts include aspects of legislative, executive, administrative, and judicial functions. *Id.* As a general rule, a district court's supervisory control over a commissioners court is limited to determining whether the commissioners court has abused its discretion or acted illegally or arbitrarily. *See id.* at 80.

In *Cameron County Good Government League v. Ramon,* the commissioners court completely failed to seek competitive bids for one contract, awarded another contract without giving adequate notice, and apparently awarded yet another contract to a company simply because the company needed the business, even though officials knew the company could not comply with the bid specifications. 619 S.W.2d 224, 226–29 (Tex.Civ.App.-Beaumont 1981, writ ref'd n.r.e.). The court stated:

[I]n determinations of fact and in discretionary determinations, judicial review of acts of the Commissioners' Court is limited to finding the existence of substantial evidence or to ascertain whether the action taken was arbitrary or capricious.

But, where a Commissioners' Court does not abide by a competitive bidding statute, fails to observe county specifications, or otherwise does not observe requirements enacted by the Legislature, the substantial evidence rule is not involved.

*Id.* at 230 (citations omitted). The court further stated that the substantial evi-

dence test does not apply to an allegation that an essential notice was not given. *Id.*

We cited *Ramon* in *Collins v. County of El Paso*, 954 S.W.2d 137, 150–51 (Tex. App.-El Paso 1997, pet. denied). In that case, we first considered whether the County complied with statutory notice requirements in a solicitation for bids to purchase County land. One party argued that the description of the land in the notice was so ambiguous that it amounted to a complete disregard of the statutory requirement that the notice contain a description of the land. *Collins*, 954 S.W.2d at 150. We cited *Ramon* for the proposition that the substantial evidence rule is not involved when a commissioners court fails to abide by a competitive bidding statute or other statutory requirements. *Id.* We therefore concluded that "with respect to the allegation concerning the failure to provide an adequate description of the property, we do not apply the substantial evidence rule and the deference it affords to the decision-making process of county commissioners." *Id.* at 151.

We also considered in *Collins* an allegation that the County had not obtained a valid appraisal of the land's value. *See id.* at 152. Although it was undisputed that the County obtained an appraisal, a party claimed that the appraisal underestimated the land's value. Because the County did not altogether disregard the statutory requirement to obtain an appraisal, we applied the substantial evidence rule to the County's choice of appraisals. *Id.*

After examining *Ramon* and *Collins*, we conclude that the substantial evidence/arbitrary and capricious test should govern our review of the Commissioners Court's decision in this case. The statement in *Ramon* that the substantial evidence test does not apply when a commissioners court "does not abide by a competitive bidding statute, fails to observe county specifications, or otherwise does not observe requirements enacted by the Legislature" must be read in the context of the facts in that case. The substantial evidence test was not applicable under those facts because the award of the contracts was facially illegal and arbitrary. Similarly, we did not apply the substantial evidence test to an allegation that a statutory requirement was completely disregarded. *See Collins*, 954 S.W.2d at 150–51. But we did apply the substantial evidence test to an allegation that a statutory requirement was not adequately fulfilled. *See id.* at 152.

Applied literally, the statement in *Ramon* would allow reviewing courts to give no deference to a commissioners court's decision whenever a violation of the competitive bidding laws is alleged. This would be out of step with the general rule that a district court's supervisory control over a commissioners court is limited to determining whether the commissioners court has abused its discretion or acted illegally or arbitrarily. *See Agan*, 940 S.W.2d at 80.

■ In this case, the dispute centers on whether LULAC was a "responsible" bidder within the meaning of section 262.027(a). Because this is a matter committed to the discretion of the commissioners court, the commissioners court's decision should be reviewed only to determine whether it was fraudulent, arbitrary, or an abuse of discretion. *See In re Appeal of Associated Sign & Post, Inc.*, 485 N.E.2d 917, 923–24 (Ind.Ct.App.1985); *Brown v. City of Phoenix*, 77 Ariz. 368, 272 P.2d 358, 361–62 (1954); 10 EUGENE MCQUILLIN, THE LAW OF MUNICIPAL CORPORATIONS §§ 29.73.05, 29.83 (Thomas Evans & Judith O'Gallagher revs., 1999).

### Responsibility and Noncompliance with Specifications

■ "The term 'lowest responsible bidder' involves compliance with statutory

requirements relating to competitive bidding." *Niles v. Harris County Fresh Water Supply Dist. No. 1A,* 336 S.W.2d 637, 638 (Tex.Civ.App.-Waco 1960, writ ref'd). The term "competitive bidding" contemplates that each bidder will bid on the same material terms and will receive fair and equal treatment. *Collins,* 954 S.W.2d at 151; *Sterrett v. Bell,* 240 S.W.2d 516, 520 (Tex.Civ.App.-Dallas 1951, no writ).[6] Therefore, to be "responsible," a bidder must comply with the material specifications of the requests for bids. 10 EUGENE MCQUILLIN, THE LAW OF MUNICIPAL CORPORATIONS § 29.73.05 (Thomas Evans & Judith O'Gallagher revs., 1999); *see also Bodies by Lembo, Inc. v. County of Middlesex,* 286 N.J.Super. 298, 669 A.2d 254, 257 (App.Div.1996).

■ A bid that does not comply with all the specifications may nevertheless be sufficient if it will substantially furnish the services requested. 10 EUGENE MCQUILLIN, THE LAW OF MUNICIPAL CORPORATIONS § 29.65, at 452 (Thomas Evans & Judith O'Gallagher revs., 1999). To determine whether a specific noncompliance constitutes a substantial, and hence nonwaivable irregularity, two criteria are applied: (1) whether the effect of a waiver would be to deprive the municipality of its assurance that the contract will be entered into, performed, and guaranteed according to its specified requirements; or (2) whether the specification is of such a nature that its waiver would adversely affect competitive bidding by placing a bidder in a position of advantage over other bidders or by otherwise undermining the necessary common standard of competition. *Id.* § 29.65, at 453; *see also SpawGlass Constr. Corp. v. City of Houston,* 974 S.W.2d 876, 885 (Tex.

App.-Houston [14th Dist.] 1998, pet. denied).

We turn now to consider whether LU-LAC's bids complied with the specifications and, if not, whether the Commissioners Court abused its discretion or acted arbitrarily in waiving the specifications.

*Well–Equipped Garage*

Both requests for bids provided, "The operator must maintain a well-equipped garage with appropriate Personnel to provide maintenance on the County vehicle(s)." The appellants assert that LU-LAC has not satisfied this requirement because it is undisputed that LULAC does not operate a garage.

The appellees argue that the word "maintain" in the requests for bids does not mean "own" or "operate," and therefore LULAC could comply with this specification by obtaining maintenance for the County's vehicles through third-party contractors. They further argue that LU-LAC addressed this specification in both of its bids by including with its bids the form prepared by the County that stated, "I propose to provide all labor, fuel, insurance, maintenance on vehicles(s) equipment . . . necessary to operate the County's transit system. . . ."

Black's Law Dictionary includes the following definitions for "maintain:"

> 1. To continue (something). 2. To continue in possession of (property, etc.). . . . . 4. To care for (property) for purposes of operation[,] productivity or appearance; to engage in general repair and upkeep.

BLACK'S LAW DICTIONARY 965 (7th ed.1999); *see also* WEBSTER'S NINTH NEW COLLEGIATE

---

6. Effective September 1, 2001, the County Purchasing Act expressly requires commissioners courts to "provide all bidders with the opportunity to bid on the same items on equal terms and have bids judged according to the same standards as set forth in the specifications." TEX. LOC. GOV'T CODE ANN. § 262.0225(a) (Vernon Supp.2004).

DICTIONARY 718 (1986) (including the following definitions for "maintain:" "to keep in an existing state," "to support or provide for," to "bear the expense of," to "sustain").

■ We also note that the requests for bids required the bids to list the location of shop facilities. Given this requirement and the definitions recited above, the only reasonable interpretation of the requirement that the bidder "maintain a well-equipped garage with appropriate Personnel to provide maintenance on the County vehicle(s)" is that the bidder must have a garage of its own.

We cannot accept the appellees' argument that LULAC responded to this specification by signing the form that the County required to be included with every bid and that stated that the bidder agreed to "provide all labor, fuel, insurance, maintenance on vehicles(s) equipment . . . necessary to operate the County's transit system. . . ." If bidders could comply with the bid specifications merely by agreeing to this general language, there would be no need to respond specifically to any of the bid specifications.

One of the appellants' interrogatories asked the County whether it attached "particular importance to the ability of the Contractor to provide maintenance for the County's vehicles." The County answered, "Yes, it was/is important that the bidder be able to properly and adequately maintain the County vehicles." And the County acknowledges in its brief that it "was concerned about the maintenance of its vehicles."

Because the County acknowledges that the maintenance of its vehicles was a material part of the bids and LULAC's bids completely failed to respond to this specification, the County was deprived of the assurance that the contract would be performed according to its specified requirements. Moreover, the County's decision to waive the requirement that the bidder maintain a garage undermined the necessary common standard of competition. Other bidders, relying on the plain language of the requests for bids, may not have submitted bids if they did not maintain a garage.

We conclude that the appellants established as a matter of law that this was a material specification, that LULAC wholly failed to respond to this specification, that LULAC was therefore not a responsible bidder, and that the County's decision to award the contracts to LULAC in spite of its material noncompliance with the bid specifications was arbitrary and an abuse of discretion.

*Necessary Licenses*

■ Both requests for bids provided, "The operator shall have all necessary licenses issued by appropriate state agencies to operate a transit system in the State of Texas." The appellants assert that LULAC has not satisfied this requirement because it is undisputed that LULAC has not registered with the Texas Department of Transportation.

The Texas Transportation Code provides that a "motor carrier may not operate a commercial motor vehicle . . . on a road or highway of this state unless the carrier registers with [the Department of Transportation]." TEX. TRANSP. CODE ANN. § 643.051 (Vernon 1999); *see also id.* § 643.001(1). The Department issues a "certificate" to registered motor carriers. *Id.* § 643.054(b) (Vernon Supp.2004).

LULAC argues that the certificate issued upon registration with the Department is not a "license," and therefore is not included within the bid requests' requirement that bidders have all necessary licenses. We disagree.

A "license" is "permission to commit some act that would otherwise be unlawful; ... [or][t]he certificate or document evidencing such permission." BLACK'S LAW DICTIONARY 931 (7th ed.1999); *see also* WEBSTER'S NINTH NEW COLLEGIATE DICTIONARY 688 (1986) (defining "license" as "permission to act"). A "certificate" is a "document in which a fact is formally attested" or a "document certifying the bearer's status or authorization to act in a specified way." BLACK'S LAW DICTIONARY 218 (7th ed.1999).

The Transportation Code prohibits a motor carrier from operating a commercial motor vehicle on a Texas road or highway unless the carrier registers with the Department. Thus, it is clear that the certificate issued upon registration is a license within the definitions recited above.

The appellees argue that Sunset's own bids demonstrate that the term "necessary licenses" did not include registration with the Department. Sunset's bids listed its registration with the Department under the heading "Included but not entirely required by the County of El Paso." There were several other certificates listed under that heading, including certificates related to interstate operations. Therefore, it is not clear that Sunset was asserting that registration with the Department was not required.

The registration requirement does not apply to "a motor vehicle used to transport passengers operated by an entity whose primary function is not the transportation of passengers, such as a vehicle operated by a hotel, day-care center, public or private school, nursing home, or similar organization." TEX. TRANSP. CODE ANN. § 643.002(4) (Vernon Supp.2004). It also does not apply to "a vehicle operated by a governmental entity." *Id.* § 643.002(6).

The County argues that LULAC falls within the exemption for entities whose primary function is not the transportation of passengers. However, LULAC's bids stated that it has been in the "Demand/Response transportation business for the past 24 years" and that it has "grown from a simple transportation operation using private vehicles to a sophisticated transportation system utilizing lift equipped vans and minibuses, a computerized scheduling program and radio dispatcher system transporting over 100 mobility impaired individuals on a daily basis throughout ... El Paso County." This is some evidence that LULAC's primary function is the transportation of passengers. The record also contains evidence that LULAC engaged in other functions, such as providing guardianship services. Therefore, a fact question exists as to what LULAC's primary function is.

Both appellees argue that LULAC falls within the exemption for vehicles "operated" by a governmental entity. The appellants argue that this exemption does not apply because the vehicles are only owned, not *operated* by the County; they are *operated* by LULAC.

Even if the vehicles owned by the County and operated by LULAC are effectively "operated" by the County for purposes of the registration requirement, that does not necessarily mean that LULAC was not required to register with the Department. The registration fee is a flat rate of $100, plus a $10 fee "for each vehicle requiring registration." *Id.* § 643.053. The record reflects that LULAC owns some vehicles and provides transportation services for entities other than the County. Therefore, accepting *arguendo* the appellees' interpretation of the exemption, the exemption still would not apply to LULAC unless it *only* operates vehicles for governmental entities. It is not clear from the record whether that is the case.

We conclude that a fact question exists regarding whether LULAC was required to register with the Department; whether it had all necessary licenses to operate a transit system in this state; and whether its failure to register with the Department, if required, amounted to a material non-compliance with the bid specifications.

## CONCLUSION

For the reasons stated herein, the County's motion to dismiss is granted to the extent that it seeks dismissal of Sunset's claim for damages, and the claim for damages is dismissed for lack of jurisdiction. In all other respects, the County's motion to dismiss is denied. The trial court's order denying the appellants' motion for partial summary judgment and granting the appellees' motions for summary judgment is reversed. Judgment is rendered declaring that the County of El Paso violated section 262.027(a) of the Texas Local Government Code by awarding the contracts at issue in this case to LULAC Project Amistad because LULAC was not a responsible bidder in that its bid did not comply with the specification to maintain a well-equipped garage with appropriate personnel to provide maintenance on the County's vehicles. This cause is remanded to the trial court for further proceedings regarding the appellants' request for a declaratory judgment that LULAC was not a responsible bidder because it does not have all necessary licenses issued by appropriate state agencies to operate a transit system in this state and regarding the appellants' request for attorney's fees.