ACCEPTED
03-16-00565-CV
13903401
THIRD COURT OF APPEALS
AUSTIN, TEXAS
11/21/2016 1:23:04 PM
JEFFREY D. KYLE
CLERK

Case No. 03-16-00586-CV
Case No. 03-16-00565-CV

FILED IN
3rd COURT OF APPEALS
AUSTIN, TEXAS
11/21/2016 1:23:04 PM
JEFFREY D. KYLE
Clerk

## IN THE COURT OF APPEALS
## FOR THE THIRD DISTRICT OF TEXAS AT AUSTIN

CITY OF AUSTIN, TEXAS, and MARC A. OTT,
in his official capacity as City Manager of the CITY
OF AUSTIN, TEXAS

Appellants and Cross-Appellees

vs.

UTILITY ASSOCIATES, INC., and MR. V. BRUCE
EVANS, a Resident of Austin, Texas

Appellees and Cross-Appellants

**UTILITY ASSOCIATES, INC. & MR. V. BRUCE EVANS' REPLY BRIEF**
*Oral Argument Requested Pursuant to Tex. R. App. P. 9.4(g)*

Smith, Gambrell & Russell LLP
100 Congress Avenue, Suite 2000
Austin, TX 78701
Tel: (512) 498-7617
Fax: (512) 879-5032
Email: pbarlow@sgrlaw.com
Email: pcrofton@sgrlaw.com
Email: bdeninger@sgrlaw.com

Jordan, Hyden, Womble, Culbreth &
Holzer, P.C.
Cielo Center Bldg. 1 - Suite #330,
1250 S. Capital of Texas Hwy,
Austin, TX 78746
Tel: (361) 884-5678
Fax: (361) 888-5555
Email:     sjordan@jhwclaw.com
           pholzer@jhwclaw.com
           aortiz@jhwclaw.com

Attorneys for Cross-Appellant
Utility Associates, Inc.

Attorneys for Cross-Appellant
Mr. V. Bruce Evans

SGR/14718082.4

# TABLE OF CONTENTS

SUMMARY OF ARGUMENTS                                                    5

ARGUMENT                                                                7

I.   The Defendants Misconstrue the Facts and the Law Concerning
     Plaintiffs' LGC Claims                                             7

     A.  THE UDJA Affords Remedies Not Available Under the LGC     7

     B.  Plaintiffs' Action Is Primarily Declaratory In Nature        9

     C.  The Defendants' Misconduct Does Not Change The
         Declaratory Nature of the Action                             10

     D.  The Defendants Seek to Rewrite Texas Statutory and
         Decisional Law                                               13

II.  Defendants Misconstrue the Facts and Law Concerning Plaintiffs'
     *Ultra Vires* Claims                                             15

     A.  The Evidence Shows the Defendants' *Ultra Vires* Conduct     16

     B.  The Defendants Now Dispute the Underlying Facts              17

III. The Recovery of Attorneys' Fees is Necessary to Combat Public
     Corruption                                                       21

     A.  The Defendants Seek to Avoid Public and Judicial Review
         of Their Current and Future Illegal and Corrupt Acts         22

     B.  The Legislature Allows Corruption Fighters to Recover
         Attorneys' Fees                                              24

     C.  Plaintiffs Have Saved Austin's Taxpayers Significantly More
         than the Fees in this Matter                                 24

IV.  Conclusion                                                       26

V.   Prayer For Relief                                                27

SGR/14718082.4

# TABLE OF AUTHORITIES

**Cases**

*Camarena v. Tex. Employment Com'n,*
754 S.W.2d 149 (Tex. 1988)................................................................13

*City of El Paso v. Heinrich,*
284 S.W.3d 366 (Tex. 2009)................................................................16

*City of New Braunfels v. Carowest Land, Ltd.,*
432 S.W.3d 501 (Tex. App. Austin 2014)............................................15

*City of Round Rock v. Whiteaker,*
241 S.W.3d 609 (Tex. App. Austin 2007)............................................19

*Crosstex Energy Servs., L.P. v. Pro Plus, Inc.,*
430 S.W.3d 384 (Tex. 2014)................................................................22

*Gattis v. Duty,*
349 S.W.3d 193 (Tex. App. Austin 2011)............................................26

*Guadalupe-Blanco River Auth. v. Tex. A.G.,*
2015 WL 868871 (Tex. App. Austin Feb. 26, 2015)..............................8

*Helena Chem. Co. v. Wilkins,*
47 S.W.3d 486 (Tex. 2001)................................................................20

*Houston Belt & Terminal R.R. Co. v. City of Houston,*
478 S.W.3d 154, 163 (Tex. 2016)........................................................21

*In re City of Corpus Christi,*
2012 WL 3755604 (Tex. App. Corpus Christi Aug. 29, 2012) .............12

*In re Continental Airlines, Inc.,*
988 S.W.2d 733 (Tex. 1988)............................................................7, 9

*In re State,*
159 S.W.3d 203 (Tex. App. Austin 2005)..............................................7

*Kassen v. Hatley,*
887 S.W.2d 4 (Tex. 1994)..................................................................19

*Labrado v. County of El Paso,*
132 S.W.3d 581 (Tex. App. El Paso 2004)......................................13, 19

*Lee v. Mitchell,*
23 S.W.3d 209 (Tex. App. Dallas 2000) ..............................................22

*MBP Corp. v. Bd. of Trustees of Galveston Wharves,*
297 S.W.3d 483 (Tex. App. Houston 2009) ........................................18

*Park v. Escalera Ranch Owners' Ass'n, Inc.,*
457 S.W.3d 571 (Tex. App. Austin 2015)............................................20

*Patel v. Tex. Dept. of Licensing and Regulation,*
469 S.W.3d 69 (Tex. 2015)................................................................11

SGR/14718082.4

*Securtec, Inc. v. County of Gregg,*
106 S.W.3d 803 ....................................................................................19

*Securtec, Inc. v. County of Gregg,*
106 S.W.3d 803 (Tex. App. Texarkana 2003)......................................13

*Souder v. Cannon,*
235 S.W.3d 841 (Tex. App. Fort Worth 2007)......................................19

*State ex rel. State Dep't of Highways & Pub. Transp. v. Gonzalez,*
82 S.W.3d 322 (Tex. 2002)...................................................................27

*Steffel v. Thompson,*
415 U.S. 452 (1974).............................................................................7, 8

*Tex. Ass'n of Bus. v. Tex. Air Control Bd.,*
852 S.W.2d 440 (Tex. 1993).................................................................17

*Tex. Dep't of Parks & Wildlife v. Miranda,*
133 S.W.3d 217 (Tex. 2004).................................................................18

*Tex. Educ. Agency v. Leeper,*
893 S.W.2d 432 (Tex. 1994).................................................................26

*Walter E. Heller & Co. v. Barnes,*
412 S.W.2d 747 (Tex. Civ. App. El Paso 1967)...................................12

*Ward v. Lamar Univ.,*
484 S.W.3d 440 (Tex. App. Houston 2016) .........................................14

**Statutes**
Tex. Civ. Prac. & Rem. Code § 37.002...............................................6, 24

Tex. Civ. Prac. & Rem. Code § 37.009...................................................22

Tex. Gov't Code § 1205.001 et seq...........................................................8

Tex. Gov't Code § 1205.061 ......................................................................8

Tex. Gov't Code § 1205.151 ......................................................................8

Tex. Gov't Code § 311.016 ......................................................................19

Tex. Gov't Code § 552.323 ......................................................................22

Tex. Hum. Res. Code § 36.110 ................................................................22

Tex. Loc. Gov't Code § 252.061.........................................................passim

Tex. Loc. Gov't Code § 252.043(h)..........................................................18

**Other Authorities**
*Uniform Declaratory Judgments Act*, Prefatory Note (Unif. Law Com'n 1922) .6, 7

SGR/14718082.4

## SUMMARY OF ARGUMENTS

The Trial Court erred in granting the Defendants' Plea to the Jurisdiction ("PTJ") against Plaintiffs' claims under the Uniform Declaratory Judgment Act ("UDJA"). The Defendants' arguments to the contrary seek to overturn almost 100 years of settled law by arguing that Chapter 252 of the Texas Local Government Code ("LGC") authorizes the Trial Court to grant declaratory relief. The Defendants also impliedly yet erroneously argue that LGC chapter 252, when combined with the Defendants' intentional misconduct in signing the Contract after this action was filed, changes the predominate nature of the Plaintiffs' claims from declaratory to injunctive.

The Defendants likewise misconstrue the facts and the law concerning Plaintiffs' claims against the City Manager for *ultra vires* conduct. The Defendants dispute the material jurisdictional facts, thereby showing the PTJ should not have been granted. The Defendants also misconstrue the scope of their discretion under LGC chapter 252 to argue that they had the discretion to violate the requirements of the competitive bid law.

The Defendants arguments come down to one point – they seek to avoid public and judicial review of their illegal procurement of body cameras, at the expense of all Texas taxpayers and citizens. The Defendants seek to change the law in a way that would thwart the Legislature's intent to encourage citizens and

SGR/14718082.4

taxpayers to fight corruption by allowing corruption fighters to recover their costs expended protecting the public. This case demonstrates the Legislature's wisdom through the $760,000 of taxpayer funds already saved and the well over $5 million of total taxpayer funds that will be saved.

Because this matter involves multiple statutory provisions and has already been the subject of multiple contested hearings as well as a companion appeal by Utility and Taxpayer – and pursuant to *Tex. R. App. P. 39.7* – Plaintiffs request the Court hear oral argument on this appeal.

SGR/14718082.4

## I. The Defendants Misconstrue the Facts and the Law Concerning Plaintiffs' LGC Claims

A. <u>The UDJA Affords Remedies Not Available Under the LGC</u>

The Uniform Declaratory Judgments Act ("UDJA") grants courts the authority to issue declarations that "settle and afford relief from uncertainty and insecurity with respect to rights, status and other legal relations." Tex. Civ. Prac. & Rem. Code § 37.002. Prior to enactment of the UDJA, most states, including Texas, required a party to have been injured in order to obtain relief. See Uniform Declaratory Judgments Act, Prefatory Note, pg. 3 (Unif. Law Com'n 1922) ("[i]t is still a primary rule of jurisdiction that until a party has been hurt, and has suffered loss, he has no standing in court").

The UDJA changed the injury-first-litigate-second process by providing courts with the prospective ability to "declare rights and duties so that parties may guide themselves in the proper legal road, and, in fact, and in truth, avoid litigation." *Id.* at 5. Consistent with the UDJA's intent to allow prospective determinations of rights, the UDJA does not include an enforcement remedy as it orders nothing to be done. *Steffel v. Thompson*, 415 U.S. 452, 482 (1974) ("A declaratory judgment is simply a statement of rights, not a binding order

SGR/14718082.4

supplemented by continuing sanctions.")[1]    That enforcement remedy comes in the form of ancillary injunctive relief to ensure that a party abides by a declaration under the UDJA.  *In re Continental Airlines, Inc.*, 988 S.W.2d 733, 736 (Tex. 1988) ("[t]he mere possibility that a defendant will disobey the final [declaratory] judgment of a court, causing it to enforce its judgment through injunction, does not transform the suit into an injunction suit. . . .")

In contrast to the prospective nature of the UDJA, *Tex. Loc. Gov't Code* ("LGC") *§ 252.061* addresses past misconduct by cities, i.e. after the taxpayers and the disappointed bidders have "been hurt and [] suffered loss."  See *Uniform Declaratory Judgments Act*, Prefatory Note, pg. 3 (Unif. Law Com'n 1922).  LGC § 252.061, entitled "Injunctions," empowers a court to enjoin a city from making payments or otherwise performing under an illegal contract that has already been entered into.  Contrary to the assertion of the Defendants,[2] LGC § 252.061 does not authorize the court to provide declaratory relief, but rather to provide "coercive," i.e. injunctive, relief. (Cross-Appellees' Brief, pg. 7). See *Steffel*, 415 U.S. at 471.

The nature of UDJA is made clear by comparison with the other declaratory judgment act adopted by the Legislature – the Public Security Declaratory

---

[1] Texas looks to cases interpreting the Federal Declaratory Judgment Act as authority for interpreting the UDJA.  See *In re State*, 159 S.W.3d 203, 207 (Tex. App. Austin 2005) (explaining that Texas courts "look to federal case law because section 37.002(c) of the declaratory judgment act compels us to construe the statute in harmony with federal law concerning declaratory judgments.").

[2] Defendants cite no authority for their contention that LGC § 252.061 authorizes a court to grant declaratory relief.  (Cross-Appellees' Brief, p. 7).

SGR/14718082.4

Judgments Act.[3] See *Tex. Gov't Code §§ 1205.001 - .152*. Unlike the UDJA, the EDJA expressly provides that a declaration under the EDJA "is a permanent injunction" against any matter "that could have been raised in the action." *Tex. Gov't Code § 1205.151*. The EDJA also authorizes the court to "enjoin the commencement, prosecution, or maintenance" of any proceeding that might interfere with the court's ability to decide the matter. *Tex. Gov't Code § 1205.061*. Notably, the EDJA expressly provides the court the ability to issue prospective declaratory relief, like the UDJA, and coercive remedial injunction relief like LGC § 252.061.

B. Plaintiffs' Action Is Primarily Declaratory In Nature

The Plaintiffs seek declaratory relief that is not "purely or primarily injunctive." See *In re Continental Airlines*, 988 S.W.2d at 736 ("the injunction venue statute applies only to suits in which the relief sought is purely or primarily injunctive"). As set forth in their Amended Petition, Plaintiffs seek the following declarations by the Court:

1. That the Defendants "engaged in an improper procurement unauthorized by law;"

2. That the award of the RFP to the higher priced and non-responsive bidder is void;

---

[3] The Public Security Declaratory Judgments Act is referred to herein as the Expedited Declaratory Judgment Act ("EDJA") as it is by Texas Courts. See generally *Guadalupe-Blanco River Auth. v. Tex. A.G.,* 2015 WL 868871 (Tex. App. Austin Feb. 26, 2015).

SGR/14718082.4

3. That the Contract be awarded to Utility as the highest scoring responsive bidder.

1 C.R. 189, ¶ 104.

In addition to those declarations, the Plaintiffs' Amended Petition also seeks the following injunctive relief:

1. Enjoin the Defendants from engaging in an illegal and improper procurement;

2. Enjoin the Defendants from performing any aspect of the Contract;

3. Enjoin the Defendants from cancelling the RFP;

4. Require the Defendants to award the Contract to Utility.

1 C.R. 189, ¶ 87.

Plaintiffs requested seven specific items of equitable relief, three which are prospective declaratory relief not available under LGC § 252.061. Consequently, Plaintiffs seek declaratory relief that is distinct from the injunctive relief requested under LGC § 252.061. Defendants' contention to the contrary misconstrues the averments of the Amended Petition. (Cross-Appellees' Brief p. 8-9 "[Plaintiffs] claims under the UDJA are identical to those pursue [sic] under Chapter 252 [. . .]").

C. The Defendants' Misconduct Does Not Change The Declaratory Nature of the Action

Plaintiff Utility's original Petition was primarily a declaratory judgment action because it sought: 1) a declaration that the Defendants had illegally awarded

SGR/14718082.4

the Contract to the non-responsible bidder Taser; and 2) ancillary injunctive relief to prevent the Defendants from executing a contract with Taser. (Original Petition, ¶¶ 73 & 57) Utility sought injunctive relief because at the time Utility commenced this action, the Defendants had not executed the Contract. 1 C.R. 13, ¶ 57. After the lawsuit was filed and Utility notified the Defendants of the Trial Court's intent to schedule a mutually agreed date for the TRO hearing, the Defendants attempted to strip the Court of jurisdiction by rushing to sign the Contract.[4] 2 R.R. 196-199.

Importantly, the Court's jurisdiction attached when Utility filed this action. See *Patel v. Tex. Dept. of Licensing and Regulation*, 469 S.W.3d 69, 78 (Tex. 2015) ("standing is determined at the beginning of a case, and whether the relief ultimately granted is the same for all parties is not determinative of the question"). When Utility initiated this action, it could not seek injunctive relief under LGC § 252.061 because there was no contract of which the Trial Court could enjoin performance. 1 C.R. 11, ¶ 57. Instead, Utility sought an order that the Defendants be enjoined from signing the contract so that the Trial Court could grant the declaratory relief sought. 1 C.R. 17.

Upon being notified that the Trial Court was requesting available dates for a hearing on Utility's request for a TRO, the Defendants intentionally and in bad

_____

[4] The relevant facts, including the testimony of the City's Purchasing Officer concerning the interruption of his vacation so that he could authorize the execution of the Contract, is explained on pages 29-31 of Cross-Appellees' Brief in the companion appeal to this one.

SGR/14718082.4

faith attempted to thwart the Trial Court's ability to review the Defendants' illegal award of the Contract. (Cross-Appellees' Brief, pg. 7). The Defendants, upon the advice of the City's Law Department, interrupted the Purchasing Officer's vacation to obtain his authorization to hurriedly sign the Contract before the Trial Court could enter a TRO. 2 R.R. 196-199. As a consequence of the "midnight signing" of the Contract by Defendants, Taxpayer joined this action and Plaintiffs filed their Amended Petition that for the first time sought under LGC § 252.061 that the Trial Court enjoin the Defendants from performing the Contract which they had illicitly signed. (Cross-Appellees' Brief, pg. 7).

Defendants' misconduct *after* the filing of this action neither changes the character of this action from predominately declaratory nor deprives the Plaintiffs of their right to seek relief under the UDJA. 1 Supp. C.R. 3-5; see also *In re City of Corpus Christi*, 2012 WL 3755604, *4 (Tex. App. Corpus Christi 2012) ("the main purpose of the suit is to obtain a declaratory judgment establishing the boundaries between two cities, and the temporary injunctive relief sought, that is, the preservation of any collected taxes, is merely ancillary or adjunctive to that relief"). Additionally, the Defendant's misconduct estops them from raising the argument that the Plaintiffs' claims under the UDJA are pre-empted by a statute that only became applicable due to the Defendants' intentional, bad faith conduct. *Walter E. Heller & Co. v. Barnes*, 412 S.W.2d 747, 753 (Tex. Civ. App. El Paso

SGR/14718082.4

1967) (Citing the "well-known maxim that 'He who comes into equity must come with clean hands' and [explaining that a litigant who has committed misconduct] cannot place itself in the position of an 'innocent person' under the principle of estoppel [that] when one of two innocent persons must suffer, the sufferer should be the one whose confidence put into the hands of the wrongdoer the means of doing the wrong."

D. The Defendants Seek to Rewrite Texas Statutory and Decisional Law

Texas law concerning bid protests favors government entities, and most cases involving bid protests are disposed of based on sovereign/governmental immunity or mootness. Nevertheless, no reported Texas decision has dismissed a bid protest claim under the UDJA based on the redundant remedy doctrine, and the Defendants impliedly concede this point. (See Cross-Appellees' Brief, pg. 11 "[t]hese cases [allowing a UDJA claim to proceed] generally reference purchasing, bidding and the remedies available to challenge governmental procurements.") In contrast, in the reported bid protest decisions in which the Plaintiff established jurisdiction, the UDJA claims have not only survived, in some instances the UDJA attorney's fees claim is the *only* part of the claim that survives. See *Labrado v. County of El Paso,* 132 S.W.3d 581, 601 (Tex. App. El Paso 2004) (remanding the case for further proceedings on bid protest claims for declaratory judgment and attorney's fees); *Securtec, Inc. v. County of Gregg,* 106 S.W.3d 803, 813 (Tex.

SGR/14718082.4

App. Texarkana 2003) (plaintiff's bid protest claim for declaratory judgment and attorney's fees were "live" and not "moot" even though construction of the project was complete); see also *Camarena v. Tex. Employment Com'n,* 754 S.W.2d 149, 151 (Tex. 1988) ("live" issue of plaintiffs' right to recover attorney's fees prevented mootness); *Ward v. Lamar Univ.,* 484 S.W.3d 440, 451 (Tex. App. Houston 2016) (plaintiff's claim for declaratory relief was not moot because she sought attorney's fees under the UDJA).

The Defendants invite this Court to rewrite this established law, without citing any authority for so doing other than a misplaced belief the scope of the relief under the UDJA is the same as that available under LGC § 252.061. (Cross-Appellees' Brief, pg. 11-15).[5] However, while extending this invitation, the Defendants do not disclose that in the Trial Court they argued that LGC Chapter 252 was inapplicable to the RFP and hence not relevant to this matter. 1 C.R. 384.

The Defendants newly constructed argument on the scope of LGC chapter 252 is inconsistent with established Texas law as applied for almost 100 years:

1. Since the adoption of the first competitive bidding statutes for cities and counties in 1917, no reported decision has determined that the competitive procurement law itself gives a right to declaratory relief;

---

[5] In furtherance of this argument, the Defendants argue in their companion appeal that LGC § 252.061 pre-empts all other remedies that might otherwise apply to a claim of illegal or corrupt contracting by a city. (Cross-Appellees' Brief, pg. 6-11).

SGR/14718082.4

2. Since the adoption of the UDJA in 1947, no reported decision has held that relief under the UDJA is duplicative of the relief available under the competitive procurement laws;

3. Since the adoption of the current competitive bid law in 1987 (LGC chapters 252 (cities) and 262 (counties)), no reported decision has dismissed a taxpayer's or unsuccessful bidder's claims for declaratory relief under the UDJA on the basis that the LGC preempts those claims or that UDJA claims are redundant of those under the LGC;

4. Since the adoption of the current competitive bid law in 1987 (LGC chapters 252 (cities) and 262 (counties)), no reported decision has determined that statutes criminalizing bribery and other forms of corruption in public contracting are preempted by the LGC's criminal remedial provisions;

5. As recently as 2014, this Court determined that a UDJA claim can be asserted for violations of LGC Chapter 252. See *City of New Braunfels v. Carowest Land, Ltd.,* 432 S.W.3d 501, 533 (Tex. App. Austin 2014) (explaining that plaintiff's claim for declaratory relief against city fell "squarely within chapter 252's waiver of sovereign immunity [as] it seeks a declaration that the city violated chapter 252 in regard to [a] contract, thereby rendering that contract void and unenforceable.").

The Trial Court erred in granting the PTJ against Plaintiffs' claims under the UDJA. This Court should reverse the Trial Court's Order dismissing Plaintiffs' UDJA claims and remand for a trial on the merits.

## II. Defendants Misconstrue the Facts and Law Concerning Plaintiffs' *Ultra Vires* Claims

The broad scope of sovereign/government immunity has given rise to the *ultra vires* claim as a way to redress illegal conduct by public officials. *City of El Paso v. Heinrich*, 284 S.W.3d 366 (Tex. 2009). Importantly, an *ultra vires* claim is

SGR/14718082.4

limited to injunctive relief, or declaratory relief under the UDJA, because money damages are not available. *Id.* at 376.

## A. The Evidence Shows the Defendants' *Ultra Vires* Conduct

The Plaintiffs pled, and offered evidence at the TI Hearing of, illegal conduct by the Defendants, including:

1. The Defendants failed to disqualify as non-responsive the Taser offer, as required by LGC § 252.043(h),[6] even though that offer did not satisfy the Mandatory Technical Requirements of the RFP (3 R.R. 311-316);

2. The Defendants failed to disqualify as non-responsive the Taser offer, as required by LGC § 252.043(h), even though that offer did not contain complete pricing as required by the RFP (3 R.R. 338-344);

3. The Defendants failed to award the Contract, as required by LGC. § 252.043(h), to the Offeror that submitted the responsive offer that provided the City with the best value.

## B. The Defendants Now Dispute the Underlying Facts

The Trial Court was required to construe the facts, both those pled and those offered as record evidence, and any inferences to be drawn from those facts in favor of the Plaintiffs' claims having jurisdiction. *Tex. Ass'n of Bus. v. Tex. Air Control Bd.*, 852 S.W.2d 440, 446 (Tex. 1993). The Defendants' nevertheless argue that the weight of the record evidence, and the inferences to be drawn from that evidence, show the Plaintiffs' claims fail on the merits: "the Plaintiffs have

---

[6] Pursuant to LGC § 252.043(h), if a municipality applies the competitive sealed proposals requirement to a contract, it "must be awarded to the **responsible offeror** whose proposal is determined to be the most advantageous to the municipality considering the relative importance of price and the other evaluation factors" in the RFP.

SGR/14718082.4

only offered self-serving statements and self-created documents that were given no objective credibility by the trial court." (Cross-Appellees' Brief, pg. 22).

The Defendants' arguments demonstrate the existence of disputed jurisdictional facts that go to the merits of the underlying claims that the Defendants illegally awarded and executed a contract with a non-responsible offeror. Simply put, a Trial Court errs if it grants a plea to the jurisdiction without allowing the trier of fact to decide jurisdictional factual disputes. *MBP Corp. v. Bd. of Trustees of Galveston Wharves*, 297 S.W.3d 483, 488 (Tex. App. Houston 2009) ("if the evidence reveals a fact question on the jurisdictional issue, we will remand the dispute to be resolved by the fact-finder."). As explained by the Texas Supreme Court, "after the state asserts and supports with evidence that the trial court lacks subject matter jurisdiction, we simply require the plaintiffs, when the facts underlying the merits and subject matter jurisdiction are intertwined, to show that there is a disputed material fact regarding the jurisdictional issue." *Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 228 (Tex. 2004).

C. The Defendants Argue They Have the Discretion to Violate the Law

Government officials are required to comply with the law at all times when performing their official duties. Phrased differently, a government official does not have the discretion to violate the law. See *Kassen v. Hatley*, 887 S.W.2d 4, 8 (Tex. 1994) [emphasis added] ("The purpose of official immunity is to insulate the

SGR/14718082.4

functioning of government from the harassment of litigation, **not to protect erring officials**."); see also *City of Round Rock v. Whiteaker,* 241 S.W.3d 609, 628-629 (Tex. App. Austin 2007) (explaining that sovereign immunity does not extend to a government official whose acts are illegal or unauthorized by law); *Souder v. Cannon*, 235 S.W.3d 841, 854-858 (Tex. App. Fort Worth 2007) (explaining improper conduct of city officials that was not protected by official immunity).

LGC chapter 252 requires cities to follow proscribed procedures when conducting a competitive procurement. In the context of a procurement using a request for proposal, cities as well as the personnel acting on their behalf are prohibited from awarding a contract to an offeror that does not meet the minimum RFP requirements. LGC § 252.043(h) and *Labrado* at 598-599 (concluding that requirements stated in request for bids were material); see also *Securtec* at 813 (finding that the LGC required the County Defendant to communicate in the RFP all material terms, including its desire to entertain pricing revisions of pricing in proposals, to ensure all bidders receive fair and equitable treatment). Additionally, Chapter 252 provides that "the contract must be awarded to the responsible offeror whose proposal is determined to be the most advantageous to the municipality considering the relative importance of price and the other evaluation factors included in the request for proposals." LGC § 252.043(h). As the City's Purchasing Officer, Mr. Scarboro, testified:

SGR/14718082.4

> Offers that do "not meet the mandatory requirements would not be – would not be compliant with the solicitation specifications, therefore nonresponsive." 2 R.R. 178.

This obligation to award the contract to the responsible offeror who provides the best value is mandatory, not discretionary.[7]

The Plaintiffs pled, and offered evidence showing that, the Defendants did not comply with these mandatory requirements. The pled and proved facts show that Utility and Taser submitted proposals. 1 C.R. 329-330. The Defendants evaluated those proposals and determined that Taser did not meet the Mandatory Technical Requirements and had not submitted complete pricing. 3 R.R. 311-316 and 338-344. The Defendants ranked the Offers and assessed Utility as the highest ranked, responsive bidder, but nevertheless ranked Taser's non-responsive Offer higher despite these recognized defects in Taser's Offer.[8] 1 C.R. 329-330.

The Defendants' "evaluation matrix" below shows the Defendants' ranking of Taser's and Utility's offers *__after__* the discretionary evaluations had been completed:

---

[7] The governing body of a city has the right to reject any or all "bids." LGC chapter 252 distinguishes between "proposals" which are submitted in response to an RFP, and "bids" which are submitted in response to request for sealed bids. For purposes of this appeal, this distinction is not relevant because the Austin City Council decide to award the Contract without purporting to reject any of the Offers, including Utility's Offer.

[8] The Defendants manipulated the ranking process by making after-the-fact reductions to Utility's score, to ensure that Taser's Offer was ranked higher than Utility's. However, the Defendants' improper manipulation of the ranking process is not relevant because Taser's offer is non-responsive, and the highest ranked responsive Offeror is Utility.

SGR/14718082.4

| EVALUATION MATRIX Request for Proposal EAD0124 Body Worn Cameras for Austin Police Department | | | | | | |
|---|---|---|---|---|---|---|
| EVALUATION CRITERIA | MAX POINTS | RESPONDENT Taser International | RESPONDENT Utility Associates, Inc. | RESPONDENT Vievu, LLC | RESPONDENT Digital Ally, Inc. | RESPONDENT Austin Ribbon & Computer Supplies, Inc. |
| City, State | 100.0 | Scottsdale, AZ | Decatur, GA | Seattle, WA | Lenexa, KS | Austin, TX |
| MBE/WBE | | | | | | |
| Price | 30.0 | 28.3 | 30.0 | 23.4 | 13.6 | * |
| Technical, cloud, and functional match to requirements | 25.0 | 21.3 | 15.8 | 16.0 | 16.7 | * |
| Hardware maintenance and ongoing support including experience, staff qualifications, and staff availability | 25.0 | 22.8 | 17.3 | 20.0 | 16.0 | * |
| Local business presence | 10.0 | 0.0 | 0.0 | 0.0 | 0.0 | * |
| Testing/training plan | 5.0 | 5.0 | 4.7 | 3.3 | 2.8 | * |
| Ability to meet timeline/propose feasible timeline | 5.0 | 4.5 | 3.2 | 3.7 | 3.5 | * |
| **TOTALS** | | 81.9 | 71.0 | 66.4 | 52.6 | * |

(* in the chart above denotes Offers that are non-responsive). See 1 C.R. 330 (excerpt).[9]

LGC chapter 252 provides that the Defendants "must" award the Contract to the highest ranked, responsible Offeror. This requirement is not discretionary – it is mandatory.[10] Contrary to Defendants' assertions, Plaintiffs do not seek to interfere with Defendants' exercise of discretion in ranking the Offers. (Cross-

---

[9] The above matrix also notes that Austin Ribbon – another Offeror – was disqualified and ineligible for award.

[10] Texas courts look to the Texas Code Construction Act when construing statutory language. *Lee v. Mitchell*, 23 S.W.3d 209, 212 (Tex. App. Dallas 2000). Pursuant to the Code Construction Act, "May" creates discretionary authority or grants permission or a power whereas "Must" creates or recognizes a condition precedent. See *Tex. Gov't Code § 311.016*. Both this Court and the Texas Supreme Court have stated "that "must" generally has a mandatory effect, creating a duty or obligation." *Park v. Escalera Ranch Owners' Ass'n., Inc.,* 457 S.W.3d 571, 588 (Tex. App. Austin 2015) citing *Helena Chem. Co. v. Wilkins,* 47 S.W.3d 486, 493 (Tex. 2001).

SGR/14718082.4

Appellees' Brief pg. 16-20). Accordingly, Plaintiffs do not seek declaratory relief concerning discretionary acts by the Defendants or relief that is otherwise unavailable under the UDJA.[11]

Plaintiffs simply seek a declaration that the Contract should be awarded to Utility – the highest scoring responsible bidder – as illustrated by the version of Defendants' 'evaluation matrix' below that has been modified to comply with the requirements imposed on the Defendants by LGC § 252.043(h):

**EVALUATION MATRIX**
**Request for Proposal**
**EAD0124**
**Body Worn Cameras for Austin Police Department**

| EVALUATION CRITERIA | MAX POINTS | RESPONDENT<br>Taser International | RESPONDENT<br>Utility Associates, Inc. | RESPONDENT<br>Vievu, LLC | RESPONDENT<br>Digital Ally, Inc. | RESPONDENT<br>Austin Ribbon & Computer Supplies, Inc. |
|---|---|---|---|---|---|---|
| City, State | 100.0 | Scottsdale, AZ | Decatur, GA | Seattle, WA | Lenexa, KS | Austin, TX |
| MBE/WBE | | | | | | |
| Price | 30.0 | * | 30.0 | 23.4 | 13.6 | * |
| Technical, cloud, and functional match to requirements | 25.0 | * | 15.8 | 16.0 | 16.7 | * |
| Hardware maintenance and ongoing support including experience, staff qualifications, and staff availability | 25.0 | * | 17.3 | 20.0 | 16.0 | * |
| Local business presence | 10.0 | * | 0.0 | 0.0 | 0.0 | * |
| Testing/training plan | 5.0 | * | 4.7 | 3.3 | 2.8 | * |
| Ability to meet timeline/propose feasible timeline | 5.0 | * | 3.2 | 3.7 | 3.5 | * |
| **TOTALS** | | * | 71.0 | 66.4 | 52.6 | * |

(* in the chart above denotes Offers that are non-responsive).

---

[11] *Houston Belt & Terminal R.R. Co. v. City of Houston*, 478 S.W.3d 154, 163 (Tex. 2016) ("[G]overnmental immunity bars suits complaining of an exercise of absolute discretion but not suits complaining of either an officer's failure to perform a ministerial act or an officer's exercise of judgment or limited discretion without reference to or in conflict with the constraints of the law authorizing the official to act").

SGR/14718082.4

The Trial Court erred in granting the PTJ against Plaintiffs' claims under the UDJA. This Court should reverse the Trial Court's Order dismissing Plaintiffs' UDJA claims and remand for a trial on the merits.

## III. The Recovery of Attorneys' Fees is Necessary to Combat Public Corruption

Recently, public corruption in Texas has garnered significant and widespread unflattering media coverage.[12] This corruption squanders taxpayer money, enriches corrupt public officials, and unfairly rewards contractors willing to "pay to play."[13] Taxpayers and other victims of this corruption play a vital role in identifying and stopping this illegal behavior. However, those who benefit from the corruption strive to keep the public ignorant of and powerless to stop the illicit conduct.

### A. The Defendants Seek to Avoid Public and Judicial Review of Their Current and Future Illegal and Corrupt Acts

The Defendants have, throughout this case, tried to prevent judicial review of the illegal process by which the City entered the Contract to purchase overpriced and deficient body cameras from Taser. The Defendants repeatedly denied that the

---

[12] Katie Hall, *Crystal City Mayor, City Manager Arrested in Public Corruption Raids,* Austin American Statesman, February 4, 2016 at http://www.statesman.com/news/crime--law/crystal-city-mayor-city-manager-arrested-public-corruption-raids/KoJUcy17ClDXQFeP1ZwOJK/ (last visited November 14, 2016); see also *Corruption in a Small Texas Town*, FBI News, https://www.fbi.gov/news/stories/corruption-in-a-small-texas-town (last visited October 3, 2016).

[13] Matt Zapotosky, *This Might be the Most Corrupt Little Town in America*, Washington Post, March 5, 2016 at https://www.washingtonpost.com/world/national-security/this-might-be-the-most-corrupt-little-town-in-america/2016/03/05/341c21d2-dcac-11e5-81ae-7491b9b9e7df_story.html (last visited November 14, 2016).

SGR/14718082.4

Trial Court had jurisdiction, in the hope that the Trial Court would dismiss the matter without the public having the opportunity to learn of the Defendants' rigged procurement process.

The Defendants' extraordinary efforts to avoid judicial review of their conduct include:

1. The midnight signing of the Contract in hopes of avoiding a TRO and mooting Utility's claims;

2. Arguing LGC chapter 252 did not apply to the RFP because this was an exempt public safety procurement, only to abandon that argument after Plaintiffs obtained a copy of the City's Procurement Manual which established the Defendants did not follow any of the processes required to have a procurement exempted from LGC Chapter 252 (2 Supp. C.R. 26-186 and 2 Supp. R.R. 28-34); and

3. Arguing that LGC § 252.061 was inapplicable to this matter, only to abandon that argument and argue on appeal that LGC § 252.061 is applicable and limits Plaintiffs available remedies so that the Defendants can cancel the RFP and moot this action.

The Defendants' 'Stalingrad defense tactics' demonstrate their intent to make this case as difficult and expensive as possible in an effort to prevent Plaintiffs from obtaining judicial review of the illegal procurement of the Contract with Taser. However, any newly imposed judicial limits on Plaintiffs' rights in this case will limit the ability of *all* taxpayers' and bidders' victimized by future corrupt procurements to obtain judicial review. Without judicial review, the citizens' and taxpayers' means of holding their government accountable will be significantly reduced, and there will be fewer checks on corrupt public officials.

SGR/14718082.4

B. The Legislature Allows Corruption Fighters to Recover Attorneys' Fees

The Legislature recognizes that public citizens and taxpayers who seek judicial relief to fight corruption benefit the entire body politic. Accordingly, in order to protect the public good, the Legislature affords such plaintiffs the ability to recover their fees and expenses. Examples include:

  i. Whistleblower claims – *Tex. Educ. Agency v. Leeper,* 893 S.W.2d 432 (Tex. 1994) (explaining that Texas' "Whistleblower Act expressly provides for waiver of immunity and for recovery of attorneys' fees");

  ii. Open Meeting Act claims – *Gattis v. Duty*, 349 S.W.3d 193, 202 (Tex. App. Austin 2011) (discussing that whether a party is entitled to recover attorney's fees under the Open Meetings Act "turns on whether there has been a material alteration in the legal relationship between the parties");

  iii. Open Records Act claims – see *Tex. Gov't Code § 552.323*;

  iv. UDJA claims – see *Tex. Civ. Prac. & Rem. Code § 37.009;* and

  v. Medicaid Fraud claims – see *Tex. Hum. Res. Code § 36.110*.

C. Plaintiffs Have Saved Austin's Taxpayers Significantly More than the Fees in this Matter

The wisdom of encouraging taxpayers and unsuccessful bidders to pursue judicial relief for illegal procurement is demonstrated by this matter. The Plaintiffs have, by filing this action, already saved the taxpayers of the City of Austin over $762,000 dollars in connection with the body camera procurement.[14] And if the

---

[14] See description of cuts to the City of Austin's 2016-2017 Budget, available on the Austin City Council website at: http://www.austintexas.gov/edims/document.cfm?id=263149 (last visited on November 11, 2016).

SGR/14718082.4

Plaintiffs prevail on the merits, the taxpayers of the City of Austin may save well over $5 million dollars.[15]

While admittedly this Court's role is not to review the merits of the Plaintiffs' claims, this Court is charged with interpreting the Legislature's enactments of laws that provide citizens and taxpayers with checks on illegal contracting by public officials. See *State ex rel. State Dep't of Highways & Pub. Transp. v. Gonzalez*, 82 S.W.3d 322, 327 (Tex. 2002) [internal citations omitted] (explaining that when Texas courts interpret statutory language "we try to determine and give effect to the Legislature's intent [and] determine legislative intent from the entire act and not just from isolated portions.") There can be no debate that the Legislature intended to provide taxpayers with tools to stop, and in appropriate circumstances to reverse, illegal and wasteful spending by city officials. Even the Defendants now concede that one of those tools is LGC § 252.061.

But as repeatedly determined by the courts, another of those tools is the UDJA, and with it the right of plaintiffs to seek to recover their costs expended in

---

[15] On June 23, 2016, the City Council approved an approximate total cost of $17.2M for body-cameras/services (comprised of approximately $12.2M for body-cameras from Taser pursuant to the Contract and approximately $5M for another contract under a separate procurement for iPhones from AT&T which are required to supplement the body-cameras provided by Taser in order to satisfy all the Mandatory Technical Requirements of the RFP). 1 C.R. 139-140. However, Utility's offer – which satisfied ALL of the requirements in the RFP and did not require any additional contracts – was less than the Taser Offer itself, let alone the Taser Offer and the iPhone contract. Thus, if the Contract is awarded to Utility the City will save well over $5M. 2 R.R. 89-93.

SGR/14718082.4

protecting the public good. Importantly, the UDJA does not provide a plaintiff with a right to recover its fees and costs. Rather, the UDJA authorizes a court to exercise its discretion to award fees as is "equitable and just" to either the plaintiff *or the defendant.* See UDJA § 37.009.

Trial courts are in the best position to determine when it is equitable and just to allow a plaintiff to recover its costs expended saving taxpayer money. A judicially imposed change in the current law concerning a taxpayer's ability to recover its costs fighting corruption will thwart the Legislature's intent, and will beget more corruption and wasteful spending of taxpayer money. The Defendants invite this Court to change established law for the sole purpose of shielding their current and future improper acts from judicial scrutiny. This Court should reject that invitation so as to help protect all Texans from public corruption.

## IV.   Conclusion

The Trial Court erred in dismissing Plaintiffs' claims under the UDJA. The Plaintiffs' claims are primarily declaratory in nature, and Plaintiffs' request for ancillary injunctive relief under LGC § 252.061 does not affect the declaratory nature of Plaintiffs' claims.

The Trial Court also erred in dismissing Plaintiffs' claims under the UDJA relative to the City Manager's *ultra vires* conduct. The Defendants failed to follow

SGR/14718082.4

the procedures mandated by LGC chapter 252, and the Defendants do not have the discretion to violate those legal requirements.

The Trial Court's dismissal of Plaintiffs' UDJA claim for attorney's fees will have a chilling effect on citizens and taxpayers throughout the state. This effect will thwart the Legislature's intent to fight corruption and embolden public officials to waste taxpayer money protected from public and judicial scrutiny. Accordingly, this Court should reverse the Trial Court's dismissal of Plaintiff's UDJA claims with prejudice.

## V.   Prayer For Relief

WHEREFORE, Plaintiffs, Utility Associates, Inc. and Mr. V. Bruce Evans, pray that this Court reverse the portion of the Trial Court's Order granting the Defendants' Plea to the Jurisdiction as to Plaintiffs' claims under the UDJA, and remand this case for further proceedings.

Respectfully submitted this 21st day of November, 2016,

Smith, Gambrell & Russell LLP
100 Congress Ave., Suite 2000
Austin, TX 78701
Tel: (512) 498-7617
Fax: (512) 879-5032
Email:pbarlow@sgrlaw.com
        pcrofton@sgrlaw.com
        bdeninger@sgrlaw.com

By:   /s/ Peter B. Barlow
        Peter B. Barlow, Esq.
        TX Bar No.: 24098860

SGR/14718082.4

Peter M. Crofton, Esq.
GA Bar No.: 197122
Admitted Pro Hac Vice
Benjamin P. Deninger, Esq.
GA Bar No.: 549925
Pro Hac Vice Application Pending

**Attorneys for Cross-Appellant Utility Associates, Inc.**

Jordan, Hyden, Womble, Culbreth & Holzer, P.C.
Cielo Center Bldg. 1 - Suite #330,
1250 S. Capital of Texas Hwy
Austin, Texas 78746
Tel:   (361) 884-5678
Fax:   (361) 888-5555
Email:sjordan@jhwclaw.com
        pholzer@jhwclaw.com
        aortiz@jhwclaw.com

By:   /s/ Shelby A. Jordan
        Shelby A. Jordan
        St. Bar No. 11016700
        Antonio Ortiz
        St. Bar No. 24074839

**Attorneys for Counter-Appellant Mr. V. Bruce Evans**

SGR/14718082.4

## CERTIFICATE OF COMPLIANCE WITH TEX. R. APP. P. 9.4

This is to certify that this document complies with the applicable word count requirements in Tex. R. App. P. 9.4 and contains 6,338 words.

/s/ Shelby A. Jordan
Shelby A. Jordan

SGR/14718082.4

# CERTIFICATE OF SERVICE

This is to certify that I served a copy of the foregoing on all parties, or their attorneys of record, in compliance with the Texas Rules of Appellate Procedure, this 21st day of November, 2016.

VIA Electronic Mail & E-Services to:

Matthew W. Tynan
Matthew.tynan@austintexas.gov
City of Austin-Law Department
Post Office Box 1546
Austin, Texas 78767-1546
Tel: (512) 974-2185
Fax: (512) 974-1311

ATTORNEYS FOR DEFENDANTS

/s/ Shelby A. Jordan
Shelby A. Jordan

SGR/14718082.4