# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-07-00429-CV

**Texas Health Insurance Risk Pool, Appellant**

**v.**

**Southwest Service Life Insurance Company and Regal Life of America
Insurance Company, Appellees**

### FROM THE DISTRICT COURT OF TRAVIS COUNTY, 261ST JUDICIAL DISTRICT
NO. D-1-GN-06-002848, HONORABLE STEPHEN YELENOSKY, JUDGE PRESIDING

## O P I N I O N

Southwest Service Life Insurance Company ("Southwest") and Regal Life of America Insurance Company ("Regal") brought a declaratory-judgment action against the Texas Health Insurance Risk Pool ("the Pool"), seeking a declaration that Southwest and Regal were not liable for certain amounts assessed against them by the Pool. *See* Tex. Ins. Code Ann. §§ 1506.251, .253 (West Supp. 2008) (providing that Pool may levy annual and interim assessments on health insurers to cover operating expenses). The parties filed cross motions for summary judgment, and the trial court granted Southwest and Regal's motion and denied the Pool's motion. After a bench trial on the limited issue of attorney's fees, the trial court awarded fees in favor of Southwest and Regal. The Pool appeals, arguing that the trial court erred in granting summary judgment in favor of Southwest and Regal. The Pool further argues that because the summary judgment was improper, the attorney's

fee award should also be reversed. Because we hold that the trial court did not err in granting summary judgment or abuse its discretion in awarding attorney's fees, we affirm the trial court's judgment.

## BACKGROUND

The legislature created the Pool in 1989 for the purpose of providing access to health insurance coverage to otherwise uninsurable Texans. *See* Act of May 27, 1989, 71st Leg., R.S., ch. 1094, 1989 Tex. Gen. Laws 4477. However, the Pool was not funded for operation at that time and remained dormant for several years. In 1996, Congress enacted the Health Insurance Portability and Accountability Act (HIPAA), which, among other things, set new federal minimum standards for insurers offering insurance policies to individuals, prohibiting these insurers from (1) declining coverage, (2) limiting coverage, (3) charging a higher premium, or (4) imposing preexisting condition limitations on certain qualifying applicants. *See* 42 U.S.C. § 300gg-41(a) (West 2003). HIPAA allowed states to opt out of enforcing these minimum standards by implementing an acceptable state-run alternative mechanism, such as a qualifying high-risk pool. *See id.* § 300gg-44(a)(1)(D)(ii) (West 2003). In response to HIPAA, the Texas Legislature funded the Pool for operation and brought it into compliance to serve as a state-run alternative mechanism. *See* Act of May 10, 1997, 75th Leg., R.S., ch. 837, 1997 Tex. Gen. Laws 2679. The legislature decided that the Pool's funding would be derived in part from interim and annual assessments on health insurance companies doing business in Texas. *See* Tex. Ins. Code Ann. §§ 1506.251, .253.

The issue presented by this case is whether, at the time in question, Southwest and Regal were subject to the Pool's interim and annual assessments, which could only be imposed on

2

entities issuing "health benefit plan[s]." *Id.* Upon receiving notices of assessment from the Pool in July 2006, which included an annual assessment for 2005 and an interim assessment for 2006, Southwest and Regal sought a declaratory judgment that they were not obligated to pay the amounts assessed.[1] The definition of "health benefit plan" has been amended multiple times, but in 2006, the statute expressly excluded the following types of health insurance from the definition of "health benefit plan":

(1) accident insurance;

(2) a plan providing coverage only for dental or vision care;

---

[1] Prior to 2003, Southwest and Regal paid the Pool's assessments without protest, though the statute in effect at that time included "other limited benefit insurance" in the list of exceptions to the types of health insurance plans that would trigger assessments. *See* Act of May 10, 1997, 75th Leg., R.S., ch. 837, § 1.01, 1997 Tex. Gen. Laws 2679, 2680. From 2003 to 2005, "other limited benefit insurance" was removed from the list of exceptions, and Southwest and Regal concede that they were not subject to any statutory exception during that time. *See* Act of May 28, 2003, 78th Leg., R.S., ch. 840, § 1, 2003 Tex. Gen. Laws 2627, 2628 (amending statute to remove "other limited benefit insurance" from list of exceptions); Act of May 29, 2005, 79th Leg., R.S., ch. 824, § 1, 2005 Tex. Gen. Laws 2824, 2825 (amending statute to reinsert exception for "other limited benefit coverage"). In addition to reinserting "other limited benefit coverage" into the list of exceptions to "health benefit plan," the 2005 amendment also altered the method used to calculate assessments from a calculation based on gross premiums received to a calculation based on the number of policies issued. *See* Act of May 29, 2005, 79th Leg., R.S., ch. 824, § 8, 2005 Tex. Gen. Laws 2824, 2827-28. This new method of calculation resulted in significantly higher assessments for Regal and Southwest. The disputed notice of assessment in the present case—the July 2006 notice—was the first notice received by Southwest and Regal after the effective date of the 2005 amendment. The statute was amended again in 2007 to exclude only certain limited benefit plans and to return to the assessment calculation method employed prior to 2005, assessing insurers based on gross premiums rather than the number of policies issued. *See* Act of May 23, 2007, 80th Leg., R.S., ch. 808, § 2, 2007 Tex. Gen. Laws 1674, 1676; Act of May 21, 2007, 80th Leg., R.S., ch. 881, §§ 2, 13, 2007 Tex. Gen. Laws 1895, 1897, 1900-01. Because the parties agree that the policies issued by Southwest and Regal are not excluded from the definition of "health benefit plan" under the current statute, our analysis in this case applies only to those assessments occurring between the effective dates of the 2005 and 2007 amendments.

(3) fixed indemnity insurance, including hospital indemnity insurance;

(4) credit insurance;

(5) long-term care insurance;

(6) disability income insurance;

(7) other limited benefit coverage, including specified disease coverage;

(8) coverage issued as a supplement to liability insurance;

(9) insurance arising out of a workers' compensation law or similar law;

(10) automobile medical payment insurance; or

(11) insurance coverage under which benefits are payable with or without regard to fault and that is statutorily required to be contained in a liability insurance policy or equivalent self-insurance.

Tex. Ins. Code Ann. § 1506.002(b) (West Supp. 2006).[2] Southwest and Regal argue that the types of policies they issue qualify as "other limited benefit coverage" under section 1506.002(b)(7), and therefore they are not subject to assessment, while the Pool contends that "other limited benefit coverage" does not include the policies issued by Southwest and Regal.

### STANDARD OF REVIEW

Summary judgments are reviewed de novo. *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex. 2005). When, as here, both parties move for summary judgment on the same issues, and the trial court grants one motion and denies the other, the appellate court considers

---

[2] Unless otherwise specified, references to section 1506.002 of the insurance code will refer to the 2006 version of the statute.

the summary-judgment evidence presented by both sides, determines all questions presented, and if the reviewing court finds that the trial court erred, renders the judgment the trial court should have rendered. *Id*.

The question of whether Southwest and Regal were subject to the assessments at issue turns solely on an issue of statutory construction. Statutory construction is a legal question that we review de novo. *State v. Shumake*, 199 S.W.3d 279, 284 (Tex. 2006). In resolving an issue of statutory construction, we are required, first and foremost, to follow the plain language of the statute. *General Motors Corp. v. Bray*, 243 S.W.3d 678, 685 (Tex. App.—Austin 2007, no pet.). We must read the statute as a whole, rather than just isolated portions, giving meaning to the language that is consistent with other provisions in the statute. *Dallas County Cmty. Coll. Dist. v. Bolton*, 185 S.W.3d 868, 872-73 (Tex. 2005); *Texas Dep't of Transp. v. City of Sunset Valley*, 146 S.W.3d 637, 642 (Tex. 2004).

A trial court's judgment in granting or denying attorney's fees in a declaratory-judgment action is reviewed for abuse of discretion. *Oake v. Collin County*, 692 S.W.2d 454, 455 (Tex. 1985). The trial court's judgment will not be reversed unless "the trial court abused its discretion by awarding fees when there was insufficient evidence that the fees were reasonable and necessary, or when the award was inequitable or unjust." *Bocquet v. Herring*, 972 S.W.2d 19, 21 (Tex. 1998).

## DISCUSSION

In its first issue on appeal, the Pool argues that the Southwest and Regal policies do not fall within the exception to the definition of "health benefit plan" for "other limited benefit

coverage." *See* Tex. Ins. Code Ann. § 1506.002(b)(7). In support of this argument, the Pool contends that the word "other," in the phrase, "other limited benefit coverage," necessarily implies that all of the preceding policy types in the list are limited in some common way and that only policies limited in the same manner qualify as "other limited benefit coverage." The Pool characterizes each of the listed policy types as being limited in the scope or reach of coverage but not necessarily in the degree or dollar amount of benefits granted. The Pool further argues that the policies issued by Southwest and Regal do not qualify as "other limited benefit coverage" because they are limited only in the degree or amount of benefits granted, rather than the scope or reach of coverage. Southwest and Regal dispute this characterization of their policies, asserting that their policies are limited both in the scope of coverage and in the degree of benefits granted.[3]

We need not decide whether the policies issued by Southwest and Regal are sufficiently limited in scope because we disagree with the Pool's assertion that limitation in scope is the sole common trait shared by the policy types listed in section 1506.002(b)(1)-(6). As Southwest and Regal point out, "fixed indemnity insurance," *see id.* § 1506.002(b)(3), is not necessarily limited in the scope of coverage provided, but instead imposes a limit on the dollar amount of benefits.[4] While the Pool argues that fixed indemnity insurance differs from the policies issued by Southwest and Regal because fixed indemnity policies provide benefits that are limited

---

[3] The summary-judgment evidence included an affidavit by Jerry Hall, Executive Vice President and Secretary of Southwest and Regal, stating, "The policies issued by Southwest and Regal provide a much narrower scope of coverage than policies that meet the minimum standards of major medical coverage like those issued by the [Risk Pool]."

[4] While Texas law does not define "fixed indemnity insurance," one state has defined it as an insurance policy that "pays a predetermined, specified, fixed benefit for services provided." Minn. Stat. § 62A.135, subd. 1(a).

6

to predetermined amounts, the fact remains that fixed indemnity insurance refers to a type of insurance for which the defining characteristic is a limitation in benefit amounts, rather than a limitation in scope. Therefore, assuming without deciding that Southwest and Regal's policies are limited only in the amount of benefits granted, rather than scope of coverage, such policies are not necessarily disqualified from falling under "other limited benefit coverage" on this basis.

Significantly, the Texas Department of Insurance (the "Department") has classified the policies issued by Southwest and Regal as "limited benefit coverage" under section 3.3079 of the administrative code. *See* 28 Tex. Admin. Code § 3.3079 (defining minimum standards for limited benefit coverage). Limited benefit coverage is defined by Department regulation as "a policy of accident and sickness insurance" where "the types and/or amounts of benefits are less than" the minimum standards for basic hospital expense coverage, basic medical-surgical expense coverage, and disability income protection coverage. *Id.* Southwest and Regal, like all insurers providing limited benefit coverage under Rule 3.3079, are required by the Department to "prominently display at the top of the outline of coverage and on the face page of the policy in no less than 14 point type" a notice regarding the policy's limitations. *Id.* The required language of this notice is set forth in Rule 3.3091(a) as follows:

> THE POLICY DESCRIBED IN THIS OUTLINE PROVIDES LIMITED BENEFITS ONLY WHICH ARE LESS THAN THE MINIMUM STANDARD FOR BENEFITS FOR (STATE CATEGORY OF COVERAGE) AS PRESCRIBED BY THE INSURANCE REGULATORY AUTHORITY OF YOUR STATE.

*Id.* § 3.3091(a). Rule 3.3079(a) was adopted by the Department in 1977 and remained in effect throughout the enactment and each subsequent amendment of section 1506.002(b). *See* 2 Tex. Reg. 159 (1977) (to be codified at 28 Tex. Admin. Code § 3.3079).

We must presume that the legislature is aware of how a particular industry operates when passing laws regulating that industry. *See Massachusetts Indem. & Life Ins. Co. v. Texas State Bd. of Ins.*, 685 S.W.2d 104, 109 (Tex. App.—Austin 1985, no writ) ("[T]he legislature, in its enactment of a statute regulating a business activity, is presumed to be familiar with the manner in which the business was conducted at the time."); *Western Co. v. Sheppard*, 181 S.W.2d 850, 856 (Tex. Civ. App.—Austin 1944, writ ref'd) ("It must be presumed that the Legislature, when it passed the act, was familiar with the manner in which such business [regulated by the act] was conducted."); *see also Acker v. Texas Water Comm'n*, 790 S.W.2d 299, 301 (Tex. 1990) ("A statute is presumed to have been enacted by the legislature with complete knowledge of the existing law and with reference to it."). Under this presumption, the legislature would have been aware, in creating an exception for "other limited benefit coverage" in section 1506.002(b)(7), that certain types of insurance policies were considered to be "limited benefit coverage" under Department regulations and were regulated by specific minimum standards and notice requirements.

The Pool argues that Rule 3.3079 is irrelevant to the present case because "specified disease coverage" is not considered "limited benefit coverage" under Rule 3.3079, while the exception in section 1506.002(b)(7) specifically excepts "other limited benefit coverage, including specified disease coverage." However, Southwest and Regal do not argue, nor do we hold, that the legislature intended "limited benefit coverage" in section 1506.002(b)(7) to be a term of art, describing *only* those policies that qualify as "limited benefit coverage" under Rule 3.3079. Rather, the existence of Rule 3.3079 merely allows us to presume that the legislature was aware that the Department considered certain policies, such as those issued by Southwest and Regal, to provide

8

such significantly limited coverage—in scope, dollar amount of benefits, or both—that they warrant a disclaimer warning consumers of the limitations. As a result, we find it significant that the legislature did not restrict the exception in section 1506.002(b)(7) to only those policies that are limited in scope, or limited in the same particular character as the other policies on the list, but more generally excepted "other limited benefit coverage." *See Cameron v. Terrell & Grant, Inc.*, 618 S.W.2d 535, 540 (Tex. 1981) ("[E]very word excluded from a statute must also be presumed to have been excluded for a purpose."). The legislature's failure to exclude any particular class of policies that were considered "limited benefit coverage" under Department regulations suggests an intent to include all such policies in the exception for "other limited benefit coverage" in section 1506.002(b)(7).

The Pool further argues that section 1506.002(b)(7) should be read to incorporate certain HIPAA regulations, in light of the Pool's purpose as an alternative mechanism to HIPAA. Specifically, the Pool contends that the term "other limited benefit coverage" was modeled after a federal exception from HIPAA compliance for "[s]uch other similar, limited benefits as are specified in regulations," 42 U.S.C. § 300gg-91(c)(2)(C) (West 2003), and that because Southwest and Regal's policies do not qualify as "limited benefits" under HIPAA regulations, they are also excluded from "other limited benefit coverage" under section 1506.002(b)(7).

This argument fails in light of the legislature's demonstrated ability to reference HIPAA regulations when necessary. Section 1205.004 of the insurance code provides a list of policies that are not creditable toward HIPAA coverage, including "coverage that provides other limited benefits *specified by federal regulations*." Tex. Ins. Code Ann. § 1205.004(b)(11)

(West Supp. 2008) (emphasis added). Section 1205.004(b)(11) indicates that where the legislature has intended to incorporate HIPAA regulations into a statute, it has done so by explicit reference. Section 1506.002(b)(7), on the other hand, contains no such reference. As a result, we conclude that the legislature did not intend to incorporate HIPAA regulations into section 1506.002(b)(7). *See Quick v. City of Austin*, 7 S.W.3d 109, 122-23 (Tex. 1999) ("Thus, while the Legislature clearly was well-versed in drafting statutes that explicitly provided that a local act was not effective until approved by the Commission, the Legislature chose not to include such an express provision in section 26.177(c). We presume that this omission has a purpose.").

An agency's interpretation of a statute it is charged with enforcing is entitled to deference, provided the agency's interpretation is reasonable and does not contradict the plain language of the statute. *See Tarrant Appraisal Dist. v. Moore*, 845 S.W.2d 820, 823 (Tex. 1993). The Pool argues that in interpreting section 1506.002(b), we should defer to a regulation adopted by the Department in response to the legislature's 1997 decision to fund the Pool for operation. *See* 23 Tex. Reg. 1309 (1998) (to be codified at 28 Tex. Admin. Code § 3.13001) (proposed Dec. 19, 1997) *transferred by* 24 Tex. Reg. 3092 (1999) (to be codified at 28 Tex. Admin. Code § 3.4401).[5] Rule 3.4401 did not exclude "other limited benefit coverage" from the Pool's assessments, as required by section 1506.002(b)(7), but provided that only the following types of coverages would avoid assessment:

(i) short term limited duration coverage;

---

[5] Rule 3.13001, which was later transferred to Rule 3.4401, has not been amended since its adoption in 1998, despite multiple amendments to section 1506.002.

(ii) coverage only for accident (including accidental death and dismemberment);

(iii) disability income insurance;

(iv) dental only or vision only benefits . . . ;

(v) credit insurance;

(vi) coverage only for a specified disease or illness . . . or hospital indemnity or other fixed indemnity insurance . . . ;

(vii) coverage issued as a supplement to liability insurance;

(viii) insurance arising out of workers' compensation or similar law;

(ix) automobile medical-payment insurance and personal injury protection; or

(x) insurance under which benefits are payable with or without regard to fault and which is statutorily required to be contained in any liability insurance policy or equivalent self insurance.

*See* 28 Tex. Admin. Code § 3.4401(a)(1)(B). The list of exceptions in Rule 3.4401 does not include "other limited benefit insurance" other than specified disease coverage. Section 1506.002(b) of the insurance code, however, specifically excepts "other limited benefit insurance, *including* specified disease coverage." Tex. Ins. Code Ann. § 1506.002(b)(7) (emphasis added). The word "including" must be construed as a term of enlargement, signifying a non-exhaustive list. Tex. Gov't Code Ann. § 311.005(13) (West 2005) ("'Includes' and 'including' are terms of enlargement and not of limitation or exclusive enumeration, and use of the terms does not create a presumption that components not expressed are excluded."). In light of this rule of statutory construction, the exception for "other limited benefit coverage, including specified disease coverage," is not solely limited to specified disease coverage, but includes additional types of limited benefit coverage. *See*

11

*Wilburn v. State*, 824 S.W.2d 755, 762 (Tex. App.—Austin 1992, no writ) (holding that where statute states that directors and officers' liability "includes" franchise taxes, legislature did not impliedly intend to exclude all items not listed).

While we generally afford deference to an agency's interpretation of a statute it is charged with enforcing, we will not do so when that interpretation is inconsistent with the plain language of the statute. *See Tarrant Appraisal Dist.*, 845 S.W.2d at 823. To the extent that the Department, in adopting Rule 3.4401(a)(1)(B), interprets the exception for "other limited benefit coverage, including specified disease coverage" in section 1506.002(b)(7) to refer solely to specified disease coverage, this interpretation is inconsistent with the plain language of the statute and is not entitled to deference.

In its final argument, the Pool cites to the most recent amendment to section 1506.002, which replaced the exception for "other limited benefit coverage" with an exception for "other similar, limited benefits specified by federal regulations issued under [HIPAA]." *See* Act of May 23, 2007, 80th Leg., R.S., ch. 808, § 2, 2007 Tex. Gen. Laws 1674, 1676; Act of May 21, 2007, 80th Leg., R.S., ch. 881, § 2, 2007 Tex. Gen. Laws 1895, 1897. The Pool claims that this amendment is evidence that the legislature "always intended" to impose the Pool's assessments on insurers like Southwest and Regal. However, as this Court has previously observed, "One legislature's interpretation of a prior legislature's enactment may be persuasive but does not control the interpretation of the prior act. And, if the later legislation differs significantly from existing law, the later legislation changes rather than clarifies existing law." *Williamson Pointe Venture v. City of Austin*, 912 S.W.2d 340, 345 (Tex. App.—Austin 1995, no writ) (citations omitted). The

12

2007 amendment not only tied the exceptions from assessment to HIPAA regulations, but also substantially revised the definition of "health benefit plan," altered Pool eligibility requirements, and changed the method of calculating annual and interim assessments to assess insurers based on gross premiums received rather than the number of policies issued.[6]  *See* Act of May 23, 2007, 80th Leg., R.S., ch. 808, 2007 Tex. Gen. Laws 1674; Act of May 21, 2007, 80th Leg., R.S., ch. 881, 2007 Tex. Gen. Laws 1895.  Because the amended statute differs significantly from the law as it existed in 2006, we conclude that the 2007 amendments served to change, rather than clarify, the existing law by adopting HIPAA regulations in reference to the exceptions from Pool assessments.  *See Williamson Pointe Venture*, 912 S.W.2d at 345.

Because we have determined that, during the relevant time period, the exception from assessment for "limited benefit coverage" in section 1506.002(b)(7) necessarily included the types of policies issued by Southwest and Regal, we hold that the trial court did not err in granting summary judgment in their favor.  The Pool's first point of error is overruled.

In its second point of error, the Pool argues that the trial court abused its discretion in awarding attorney's fees in favor of Southwest and Regal.  *See Bocquet v. Herring*, 972 S.W.2d 19, 21 (Tex. 1998) (holding that in declaratory-judgment action, trial court abuses its discretion "by awarding [attorney's] fees where there was insufficient evidence that the fees were reasonable and necessary, or when the award was inequitable or unjust").  Having stipulated to the reasonableness

---

[6] This change in the calculation method reduces the assessment burden shouldered by insurers such as Southwest and Regal who offer limited benefit coverage in return for lower premiums, a result that the legislature may very well have considered in limiting the types of policies that qualify for an exception from assessment.

13

of Southwest and Regal's attorney's fees in this case, the Pool argues only that the award was inequitable and unjust in light of the trial court's error in granting summary judgment. Given our disposition of the Pool's first point of error, we further hold that the attorney's fee award was not inequitable or unjust.

## CONCLUSION

Because we have determined that the trial court did not err in granting summary judgment in favor of Southwest and Regal and did not abuse its discretion in awarding attorney's fees, we affirm the trial court's judgment.

_____

Diane M. Henson, Justice

Before Justices Patterson, Puryear and Henson

Affirmed

Filed:   December 12, 2008