**Affirmed and Memorandum Opinion filed July 30, 2024.**



In The

# 𝕱ourteenth 𝕮ourt of 𝕬ppeals

## NO. 14-23-00243-CV

**KEN SCHAWE AND 304 CONSTRUCTION, LLC, Appellants**

**V.**

**CALDWELL COUNTY AND DANIE BLAKE, Appellees**

**On Appeal from the 421st District Court
Caldwell County, Texas
Trial Court Cause No. 21-0-272**

## M E M O R A N D U M   O P I N I O N

When 304 Construction, LLC was not awarded a Caldwell County infrastructure construction project, 304 and Ken Schawe (together, "Appellants") sued Caldwell County and its purchasing agent Danie Blake (together, the "County Appellees"). The County Appellees filed a plea to the jurisdiction, which the trial court granted. For the reasons below, we affirm.

## BACKGROUND

The County Purchasing Act sets forth the competitive bidding process that counties must follow to select a contractor for county projects costing in excess of $50,000. *See* Tex. Loc. Gov't Code Ann. §§ 262.021-262.037. As relevant here, the process culminates in a decision by the County Commissioners Court to either "award the contract to the responsible bidder who submits the lowest and best bid" or "reject all bids and publish a new notice." *Id*. § 262.027(a). The "lowest and best bid" is defined as the bid that "provide[s] the best value considering associated direct and indirect costs, including transport, maintenance, reliability, life cycle, warranties, and customer service after a sale." *Id*. § 262.022(5-a).

As Caldwell County's purchasing agent, Blake was responsible for managing the competitive bidding process for county projects. *See id*. § 262.011 (delineating the duties of a purchasing agent). In early 2020, Blake solicited bids to complete a four-part General Land Office road construction project; six bids were submitted in response to the solicitation.

The two lowest bids were $680,855.50 submitted by 304 and $737,046.41 submitted by WJC Constructor Services. As well as their bid price, the companies' bid packets included information detailing their number of years in the construction business, current and completed contracts, total staff, available equipment, and available credit. The bid packets were reviewed by Blake, engineers with Doucet & Associates, and grant management consultants with Langford Management, all of whom recommended that WJC be selected for the road construction project even though it was not the project's lowest bidder.

In this situation, the Caldwell County Purchasing Policies and Procedures Manual requires that "clear justification for not selecting the lowest bidder [] be documented to the Commissioner's Court" that delineates "the rationale for

awarding to a bidder other than the lowest bidder." In accordance with this policy, Blake prepared the following statement in advance of the March 23, 2021 Caldwell County Commissioners Court meeting:

**Discussion Items:**

The County Purchasing Department is requesting approval for the award opportunity to be given to WJC Constructors Services for the GLO Harvey CDBG Infrastructure Project RFB 20-065-020-C066.

All provided bids were reviewed by the county purchasing department, the county's contracted engineers, and contracted project management consultants taking into consideration the number of years in business, input from past and current project references, and cash flow consideration through credit limits reported on the bidder qualification forms.

Based on that review and those considerations, WJC Constructor Service will be recommended for the contract award. The lowest bidder (304 Construction) is not recommended due to inadequate credit limit amount ($100,000), concerns about equipment availability with multiple project sites and other ongoing projects, as well as limited years in business (4 years).

Caldwell County Purchasing Department notified 304 Construction of the proposed award on 03/16/21 and that they had the opportunity to appear before the Commissioners Court on March 23, 2021, at 9:00 a.m. pursuant to Texas Local Government Code 262.027 to present previously unconsidered evidence concerning the lower bid, which may include evidence of the bidder's responsibility.

**Notable Budget Items**: $737,046.41

**Recommendation to Commissioner's Court:**

County Purchasing Department respectfully recommends the following:

**Approval of award opportunity be given to WJC Constructor Services for RFB 20-065-020-C066 GLO Harvey CDBG Infrastructure Project.**

Blake's statement incorporates Local Government Code section 262.027, which provides that a county contract may not be awarded to a bidder who is not the

3

lowest dollar bidder unless, before the award, each lower bidder is given (1) notice of the proposed award, and (2) an opportunity to appear before the Commissioners Court and present previously unconsidered evidence. *See id*. § 262.027(c). In accordance with this section, Adam Meuth from 304 attended the March 23, 2021 Commissioners Court meeting to present additional evidence relevant to 304's bid. At the conclusion of the meeting, the Commissioners Court awarded the construction project to WJC.

A second Commissioners Court meeting was held approximately three weeks later, at which an attorney representing 304 appeared and provided additional evidence regarding 304's bid. The Commissioners Court declined to revisit its previous determination awarding the contract to WJC.

One month later, Appellants sued the County Appellees and alleged that "the bidding process has resulted in the erroneous award to WJC Constructors which was not the lowest and best bid." Appellants sought a declaratory judgment and an injunction to (1) cancel the contract awarded to WJC and restart the bidding process, and (2) enjoin Blake from any further involvement in the bidding process.

The County Appellees filed a plea to the jurisdiction and, in a signed order, the trial court afforded Appellants "an opportunity to conduct discovery regarding the decision to deny 304 Construction, LLC's bid." Appellants subsequently filed a motion for summary judgment and attached evidence, which the trial court agreed to "treat as a Response to [the County Appellees'] Plea to the Jurisdiction." After reviewing the parties' arguments and evidence, the trial court signed an order granting the County Appellees' plea to the jurisdiction and dismissing Appellants' claims with prejudice. Appellants timely appealed and their case was transferred

to this court by Supreme Court of Texas Transfer Order.[1]

**ANALYSIS**

Asserting the trial court erred in granting the County Appellees' plea to the jurisdiction, Appellants contend the trial court properly may exercise jurisdiction under (1) the County Purchasing Act (*see* Tex. Loc. Gov't Code Ann. § 262.033), and (2) the *ultra vires* doctrine. We consider these jurisdictional bases below, beginning with the applicable standard of review.

## I.    Standard of Review

Sovereign immunity protects the State of Texas and its agencies from suit and liability, whereas governmental immunity provides similar protections to the State's political subdivisions, including its counties, cities, and school districts. *Chambers-Liberty Cntys. Navigation Dist. v. State*, 575 S.W.3d 339, 344 (Tex. 2019). An assertion of governmental immunity implicates the trial court's subject matter jurisdiction and, therefore, may be asserted in a plea to the jurisdiction. *Harris Cnty. v. Sykes*, 136 S.W.3d 635, 638 (Tex. 2004); *City of Austin v. Findley*, No. 03-21-00015-CV, 2022 WL 1177605, at *2 (Tex. App.—Austin Apr. 21, 2022, no pet.) (mem. op.). We review a trial court's ruling on a plea to the jurisdiction *de novo*. *Tarrant Reg'l Water Dist. v. Johnson*, 572 S.W.3d 658, 664 (Tex. 2019).

When, as here, a plea to the jurisdiction challenges the existence of jurisdictional facts, we may consider relevant evidence submitted by the parties and must do so when necessary to resolve the jurisdictional issue. *Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 223, 227 (Tex. 2004). The

---

[1] Because of the transfer, we must decide the case in accordance with the precedent of the Third Court of Appeals if our decision otherwise would have been inconsistent with that court's precedent. *See* Tex. R. App. P. 41.3.

5

applicable standard of review mirrors that of a traditional summary judgment: "all the evidence is reviewed in the light most favorable to the plaintiff to determine whether a genuine issue of material facts exists." *Town of Shady Shores v. Swanson*, 590 S.W.3d 544, 550 (Tex. 2019).

But there is another layer to our review because we are, in essence, asked to revisit a decision made by the Caldwell County Commissioners Court. A Commissioners Court serves as the county's principal governing body and may exercise legislative, executive, administrative, and judicial functions. *See* Tex. Const. art. V, § 18; *Comm'rs Ct. of Titus Cnty. v. Agan*, 940 S.W.2d 77, 79 (Tex. 1997).

Appellate review of a Commissioners Court's decision is narrow: "[a] party can invoke the district court's supervisory control over a Commissioners Court judgment only when the Commissioners Court acts beyond its jurisdiction or clearly abuses the discretion conferred upon the Commissioners Court by law." *Agan*, 940 S.W.2d at 80. Accordingly, our review is limited to discerning whether the Commissioners Court acted "illegally, unreasonably, or arbitrarily," and we may not substitute our judgment and discretion for that of the Commissioners Court. *Id.*; *see also, e.g.*, *Labrado v. City of El Paso*, 132 S.W.3d 581, 597 (Tex. App.—El Paso 2004, no pet.) (to determine whether one party was a "responsible" bidder within the statute's meaning, "the commissioners court's decision should be reviewed only to determine whether it was fraudulent, arbitrary, or an abuse of discretion").

## II.    The County Purchasing Act

Schawe contends that the County Purchasing Act provides a jurisdictional foundation for his claims and points to section 262.033, which states: "[a]ny property tax paying citizen of the county may enjoin performance under a contract

6

made by a county in violation of [the County Purchasing Act]." Tex. Loc. Gov't Code Ann. § 262.033. Schawe asserts the following violations:

1. WJC was not the lowest responsible bidder because it failed to submit a signed and sworn statement of bidder's qualifications;

2. WJC was not the lowest responsible bidder because 304's bid was rejected without clear justifications; and

3. the Caldwell County Commissioners Court erred in failing to consider the additional evidence presented by 304.

Whether these allegations constitute "violation[s]" of the County Purchasing Act are questions of statutory construction we review *de novo*. *Hegar v. J.D. Fields & Co.*, 604 S.W.3d 120, 122 (Tex. App.—Austin 2020, pet. denied). Our goal when construing a statute is to ascertain and give effect to the Legislature's intent, guided by the words' plain meanings. *Id*. We interpret statutory waivers of immunity narrowly. *Mission Consol. Indep. Sch. Dist. v. Garcia*, 253 S.W.3d 653, 655 (Tex. 2008); *City of Austin v. Util. Assocs., Inc.*, 517 S.W.3d 300, 313-14 (Tex. App.—Austin 2017, pet. denied).

### A. WJC's Signed and Sworn Statement

When the bidding process was opened for the project at issue, interested bidders were instructed to submit a "Statement of Bidder's Qualifications." The Statement's opening paragraph instructs that "[t]his statement must be notarized." With its "Statement of Bidder's Qualifications," WJC included the notary statement shown below:

7

Notary Statement:

_____, being duly sworn, says that he/she is the
_____Position/Title_____of_____ (Firm Name), and hereby swears that
the answers to the foregoing questions and all statements therein contained are true and correct. He/she
hereby authorizes and requests any person, firm, or corporation to furnish any information requested Caldwell
County of _____ in verification of the recitals comprising this Statement of Bidder's
Qualifications.
Subscribed and sworn before me this _____ day of _____, 20____.

Notary Public
_Cathy O Smith_
Signature
CATHY O Smith
Printed Name

CATHY O. SMITH
Notary Public, State of Texas
Notary ID# 12881611-0
My Commission Expires
DECEMBER 2, 2023

My Commission Expires: 12-2-2023

Pointing out that the top portion of the notary statement was not completed by WJC's representative, Schawe asserted the Commissioners Court violated the County Purchasing Act by awarding the project to WJC.

We disagree for two reasons. First, the County Purchasing Act provides a jurisdictional basis for claims seeking to enjoin performance of a contract "made by a county in violation of [the County Purchasing Act]." *See* Tex. Loc. Gov't Code Ann. § 262.033. The County Purchasing Act does not include any provisions mandating a notarized statement of bidder's qualifications. *See id.* §§ 262.021-262.037. At most, this requirement was one mandated by Caldwell County — but that alone is not sufficient to establish jurisdiction under the County Purchasing Act. *See id.* § 262.033.

Second, although WJC's representative did not complete the above-shown portion of the notary statement, he did print, sign, and date the preceding page. Courts examining similar situations have declined to find that a sworn document must be signed in a particular place. *See Kohn v. Washer*, 6 S.W. 551, 552 (Tex. 1887) (concluding that an affiant's signature placed below the jurat for purposes of subscribing to the instrument nonetheless complied with the law); *see also, e.g., Dominguez v. Socorro Indep. Sch. Dist.*, No. 08-23-00083-CV, 2023 WL 8853742, at *2-3 (Tex. App.—El Paso Dec. 21, 2023, no pet.) (mem. op.) ("What matters is

whether the document was signed for the purpose of subscribing to the instrument.") (internal quotation omitted); *Acme Brick, a Div. of Justin Indus., Inc. v. Temple Assocs., Inc.*, 816 S.W.2d 440, 441 (Tex. App.—Waco 1991, writ denied) ("The law does not direct or guide where the necessary signature is to be located.").

Therefore, we decline to find that the incomplete notary statement shown above provides a basis for jurisdiction under section 262.033. *See* Tex. Loc. Gov't Code Ann. § 262.033.

## B. Clear Justifications for the Rejection of 304's Bid

In his second argument, Schawe asserts that jurisdiction is established under section 262.033 because 304's bid was rejected "without providing clear justifications for doing so."

Where, as here, a bidder other than the lowest-priced bidder is recommended for a project, the Caldwell County Purchasing Policies and Procedures Manual requires that "clear justification for not selecting the lowest bidder [] be documented to the Commissioner's Court" that delineates "the rationale for awarding to a bidder other than the lowest bidder." Following this requirement, Blake prepared a statement in advance of the March 23, 2021 Commissioners Court meeting that provided the following justifications for rejecting 304's bid: (1) "inadequate credit limit amount"; (2) "concerns about equipment availability with multiple project sites and other ongoing projects"; and (3) "limited years in business (4 years)." Schawe puts forth the following challenges to these justifications:

- a company's credit limit is not an adequate measure of cash flow;
- Doucet & Associates' recommendation letter to Blake regarding the bid selection incorrectly characterized 304's references as "generally

9

neutral or non-positive" and WJC's references as "generally positive";

- in its "Statement of Bidder's Qualifications," 304 only listed one other ongoing project which was scheduled to be completed before the commencement of the project at issue; and

- 304's owners had professional experience beyond the company itself.

These arguments do not show that the contract with WJC was made in violation of the County Purchasing Act. *See id*.

The County Purchasing Act does not require that "clear justifications" be provided when the lowest-priced bidder is rejected — rather, the Act mandates only that a contract be awarded to "the responsible bidder who submits the lowest and best bid." *Id*. § 262.027(a). The "lowest and best bid" is defined as the bid that "provide[s] the best value considering associated direct and indirect costs, including transport, maintenance, reliability, life cycle, warranties, and customer service after a sale." *Id*. § 262.022(5-a). The justifications provided by Blake fall within these "best value" considerations. *See id*.; *see also Tex. Health Ins. Risk Pool v. Sw. Serv. Life Ins. Co.*, 272 S.W.3d 797, 804 (Tex. App.—Austin 2008, no pet.) ("The word 'including' must be construed as a term of enlargement, signifying a non-exhaustive list.") (citing Tex. Gov't Code Ann. § 31.005(13)).

Moreover, as set out above, our review of a Commissioners Court decision is narrow and confined to examining whether the Court acted illegally, unreasonably, or arbitrarily. *Agan*, 940 S.W.2d at 80; *Labrado*, 132 S.W.3d at 597. But Schawe's arguments address the justifications provided for 304's rejection on a granular level and specifically challenge the appropriateness of the chosen metrics or the measurements made pursuant to them. These arguments fall outside the scope of our review. *See Agan*, 940 S.W.2d at 80; *Labrado*, 132 S.W.3d at 597.

Therefore, we decline to find that the justifications provided for the rejection

10

of 304's bid constitute a basis for jurisdiction under section 262.033. *See* Tex. Loc. Gov't Code Ann. § 262.033.

### C. 304's Additional Evidence

Under Local Government Code section 262.027, a contract may not be awarded to a bidder who is not the lowest bidder unless, before the award, each lower bidder is given: (1) notice of the proposed award, and (2) an opportunity to appear before the Commissioners Court and present previously unconsidered evidence concerning the lower bid as best. *See id.* § 262.027(c). In accordance with this provision, 304 presented additional evidence regarding its bid at the March 23, 2021 and April 12, 2021 Commissioners Court meetings.

In his final argument for section 262.033 jurisdiction, Schawe asserts the Commissioners Court erred in failing to consider this additional evidence. Schawe contends that the "evidence was material and if considered, would have likely changed the result of the vote."

But the record does not support Schawe's contention that the Commissioners Court failed to consider 304's additional evidence. With their summary judgment motion, Appellants attached transcripts from both the March 23 and April 12, 2021 Commissioners Court meetings. At the meetings, 304 representatives discussed their bid for the project and presented additional evidence for the Court's consideration. There is no indication that the Commissioners Court failed to consider this evidence. Without this showing, Schawe cannot support his argument for jurisdiction on this basis. *See Town of Shady Shores*, 590 S.W.3d at 550; *Miranda*, 133 S.W.3d at 223, 227.

We decline to find that this argument provides a basis for jurisdiction under section 262.033. *See* Tex. Loc. Gov't Code Ann. § 262.033. Having overruled all

three arguments on this point, we overrule Appellants' first issue in its entirety.

### III.   Appellants' *Ultra Vires* Claims

Appellants' alternative theory for invoking the trial court's jurisdiction relies on the *ultra vires* exception, whereby a claimant can seek prospective relief to compel a governmental body to comply with its statutory authority to perform a non-discretionary duty. *See City of El Paso v. Heinrich*, 284 S.W.3d 366, 372 (Tex. 2009); *Tex. Tel. Ass'n v. Pub. Util. Comm'n of Tex.*, 653 S.W.3d 227, 248 (Tex. App.—Austin 2022, no pet.). To invoke this exception, a suit must allege and prove that a government officer, acting within her official capacity, acted without legal authority or failed to perform a purely ministerial act. *Heinrich*, 284 S.W.3d at 372; *Tex. Tel. Ass'n*, 653 S.W.3d at 249.

"Ministerial acts are those where the law prescribes and defines the duties to be performed with such precision and certainty as to leave nothing to the exercise of discretion or judgment." *Sw. Bell Tel., L.P. v. Emmett*, 459 S.W.3d 578, 587 (Tex. 2015) (internal quotation omitted). Conversely, if an action involves personal deliberation, decision, and judgment, it is discretionary and falls outside the purview of what may be considered a ministerial action. *City of Lancaster v. Chambers*, 883 S.W.2d 650, 654 (Tex. 1994); *Crystal Int'l, Inc. v. Tex. Comm'n on Env't Quality*, No. 03-16-00008-CV, 2016 WL 4272117, at *4 (Tex. App.—Austin Aug. 10, 2016, no pet.) (mem. op.).

When an official is granted discretion to interpret the law, an action is not *ultra vires* just because it is erroneous — "[o]nly when these improvident actions are *unauthorized* does an official shed the cloak of the sovereign and act *ultra vires*." *Hall v. McRaven*, 508 S.W.3d 232, 243 (Tex. 2017) (emphasis in original). "[M]erely asserting legal conclusions or labeling a defendant's actions as '*ultra vires*,' 'illegal,' or 'unconstitutional' does not suffice to plead an *ultra vires* claim

— what matters is whether the facts alleged constitute actions beyond the governmental actor's statutory authority, properly construed." *Tex. Dep't of Transp. v. Sunset Transp., Inc.*, 357 S.W.3d 691, 702 (Tex. App.—Austin 2011, no pet.).

Relying on these legal principles, Appellants assert Blake breached several ministerial duties she, as Caldwell County's purchasing agent, was charged with carrying out. *See* Tex. Loc. Gov't Code Ann. §§ 262.011(o) ("The county purchasing agent shall adopt the rules and procedures necessary to implement the agent's duties under this section subject to approval by the Commissioners Court."), 262.0115(d) ("the purchasing agent . . . shall administer the procedures prescribed by law for notice and public bidding for county purchases and contracts"). Specifically, Appellants assert Blake failed to perform the following ministerial acts:

1.  reject WJC's bid because it lacked a properly notarized statement of bidder's qualifications;
2.  provide clear justifications for not selecting 304 for the county contract; and
3.  recuse herself from the bidding process due to conflicts of interest.

We consider these alleged *ultra vires* acts individually below.

## A.  WJC's Signed and Sworn Statement

Appellants argue that Blake had a ministerial duty to reject WJC's bid because it did not contain a "properly notarized statement of bidder's qualifications."

We disagree. As discussed above, WJC's representative printed, signed, and dated the page preceding the notary statement, and courts have declined to require that a sworn document be signed in a particular location. *See Kohn*, 6 S.W. at 552;

*Dominguez*, 2023 WL 8853742, at \*2-3; *Acme Brick, a Div. of Justin Indus., Inc.*, 816 S.W.2d at 441. Because the law does not impose a specific requirement regarding signature placement on a sworn document, Blake was not under a ministerial duty to reject WJC's bid for the alleged defect therein. *See Sw. Bell Tel., L.P.*, 459 S.W.3d at 587.

We overrule Appellants' *ultra vires* argument on this point.

### B.     Clear Justifications for Rejecting 304's Bid

Asserting that Blake's provided reasons for rejecting 304's bid "were littered with half-truths and allegations that were not factually supported by the underlying investigation," Appellants contend that Blake failed to provide "clear justifications" for 304's rejection. Therefore, Appellants argue, Blake breached her ministerial duty to recommend to the Commissioners Court a "responsible bidder who submits the lowest and best bid." *See* Tex. Loc. Gov't Code Ann. § 262.027(a)(1).

Similar allegations were considered in *City of Austin v. Utility Associates, Inc.*, in which an unsuccessful applicant challenged the City's decision to award a contract to another vendor following a competitive bidding process. *See* 517 S.W.3d at 304, 308-11. On appeal, the plaintiffs asserted that their claims fell within the *ultra vires* exception to the City's governmental immunity because the defendants were required to award the contract to the "responsible offeror" with the bid "most advantageous to the municipality considering the relative importance of price and other evaluation factors." *Id*. at 310 (citing Tex. Loc. Gov't Code Ann. § 252.042(b)). Specifically, the plaintiffs argued that the competing vendor's proposal failed to comply with numerous mandatory technical requirements. *Id*.

Rejecting this argument, the Austin Court of Appeals reasoned that:

14

[t]he above allegations by Plaintiffs, without more, amount only to disagreements with the outcome of determinations by the City Defendants that were well within their discretion to reach. It is true, as Plaintiffs emphasize, that Chapter 252 requires that "the contract *must* be awarded to the responsible offeror . . ." and that "must" typically denotes a requirement rather than a choice. But Plaintiffs overlook that the identity of the "responsible offeror" to whom "the contract must be awarded" turns on multiple underlying determinations that the City Defendants were necessarily empowered to make — it is the offeror "whose proposal *is determined to be* the most advantageous to the municipality *considering* the relative importance of price and the *other evaluation factors* included in the request for proposals." While Chapter 252 may require that the City Defendants weigh these specified considerations and factors, it does not limit their discretion in the outcome of these judgment calls.

*Id*. at 310-11 (emphasis in original); *see also Reagan Nat'l Advert. of Austin, Inc. v. Bass*, No. 03-16-00320-CV, 2017 WL 4348181, at *3 (Tex. App.—Austin Sept. 27, 2017, no pet.) (mem. op.) ("complaints that an official reached a wrong result when exercising its delegated authority are insufficient to state an *ultra vires* claim of exceeding constitutional authority") (internal quotation omitted).

Here too, Appellants' *ultra vires* allegations ultimately challenge whether the correct determination was made as to the "responsible bidder who submits the lowest and best bid." *See* Tex. Loc. Gov't Code Ann. § 262.027(a). But similar to *City of Austin*, this determination required "considering associated direct and indirect costs, including transport, maintenance, reliability, life cycle, warranties, and customer service after a sale." *See id*. § 262.022(5-a). Neither the County Purchasing Act nor the Caldwell County Purchasing Policies and Procedures Manual limit the analyses of these or other factors "with such precision and certainty as to leave nothing to the exercise of discretion or judgment." *See Sw. Bell Tel., L.P.*, 459 S.W.3d at 587. Therefore, Appellants' challenges to these underlying decisions are insufficient to establish an *ultra vires* act. *See City of*

*Austin*, 517 S.W.3d at 308-11; *Reagan Nat'l Advert. of Austin, Inc.*, 2017 WL 4348181, at *3.

### C. Conflicts of Interest

For its final *ultra vires* allegation, Appellants assert Blake had the ministerial duty to recuse herself from the bidding process. Appellants cite to the following section in the Caldwell County Purchasing Policies and Procedures Manual:

> Purchasing employees will avoid any activity that would create a conflict between personal interests and the interests of Caldwell County. Conflicts exist in any relationship where an employee is not acting in the County's best interest and may be acting in their own best interest or the interests of someone associated with them. Such conflicts of interest would include being involved in any procurement activity in which:
>
> 1. The employee or any member of the employee's family has any financial interest pertaining to the Caldwell County procurement process;
>
> 2. A business or organization in which the employee, or any member of the employee's family, has a financial interest pertaining to the Caldwell County procurement process;
>
> 3. Any person, business, or organization with whom the employee or a member of the employee's family is negotiating or has any arrangement concerning prospective employment; or
>
> 4. Any private or professional activity would create a conflict between your personal interest and the interests of Caldwell County.
>
> If any such conflicts of interest exist, the employee will immediately notify the Purchasing Manager in writing and will remove himself/herself from the Caldwell County procurement process.

Appellants contend that Blake's "relationship with her former supervisor" ran afoul of these recusal requirements because (1) one of the supervisor's daughters alleged that she previously had been abused by a 304 employee, and (2) the

16

supervisor's other daughter is married to the owner of WJC. Appellants contend that Blake "likely had knowledge of [these] allegations" because everyone in Bastrop knew about them.

We disagree that Blake's failure to recuse herself from the bidding process constitutes an *ultra vires* action. The Caldwell County Purchasing Policies and Procedures Manual does not mandate recusal in the above-described situations. **At most**, the relationship could constitute a "private . . . activity" that could "create a conflict between your personal interest and the interests of Caldwell County." But whether the relationship fell within this category is the type of personal, discretionary judgment that falls outside the purview of what may be considered a ministerial action. *See Sw. Bell Tel., L.P.*, 459 S.W.3d at 587; *City of Lancaster*, 883 S.W.2d at 654; *Crystal Int'l, Inc.*, 2016 WL 4272117, at *4.

We overrule Appellants' *ultra vires* argument on this point. Having overruled all of Appellants' *ultra vires* contentions, we overrule their second issue in its entirety.

CONCLUSION

We affirm the trial court's March 7, 2023 order granting the County Appellees' plea to the jurisdiction.


/s/    Meagan Hassan
Justice


Panel consists of Justices Wise, Spain, and Hassan.

17